UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
:
THE PROVIDENCE GROUPS, LLC,                    :   Case No.
:
Plaintiff,          :
:
v.                                             :
:
OMNI ADMINISTRATORS INC. d/b/a/ LEADING        :
EDGE ADMINISTRATORS,                           :   **COMPLAINT**
:
Defendant.          :
:
:
------------------------------------------------------------------ X

  Plaintiff, The Providence Groups, LLC ("Providence"), by and through the undersigned counsel, as and for its complaint against defendant Omni Administrators Inc. d/b/a Leading Edge Administrators ("Defendant" or "LEA"), hereby alleges as follows:

## NATURE OF ACTION

  1. This is an action involving claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq. ("ERISA"), as well as state law claims for negligence, breach of contract, indemnification, and specific performance.

## JURISDICTION AND VENUE

  2. This Court has jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's claims for negligence, breach of contract, indemnification, and specific performance pursuant to 28 U.S.C. § 1367.

  3. This Court also has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332(a)(1) based upon the complete diversity of citizenship among the parties. The amount in controversy exceeds $75,000, exclusive of interest and costs.

  4. Venue is proper in this District pursuant to the agreement of the parties and 28

U.S.C. § 1391.

## THE PARTIES

5. Providence is a Tennessee limited liability company with its principal place of business located at 110 Glancy Street, Suite 114, Goodlettsville Tennessee 37072.

6. LEA is an entity operating and existing under the laws of New York with its principal place of business at 14 Wall Street, Suite 5B, New York, New York 10005.

7. Plaintiff will serve a copy of this Complaint upon the Secretary of Labor and the Secretary of the Treasury by certified mail pursuant to 29 U.S.C. § 1132(h).

## FACTS RELEVANT TO ALL CLAIMS

8. Pursuant to 29 U.S.C. §§1003(a) and 1101(a), Providence offered and maintained an ERISA employer sponsored health benefit plan (the "Plan") for the benefit of its employees and their dependents.

9. In 2017, Providence was interested in learning about, and was presented, the opportunity to self-insure the Plan by LEA. LEA issued a proposal to Providence as of November 6, 2017 providing for a self-insured plan with an effective date of December 1, 2017.

10. By self-insuring the Plan, Providence would be accepting the risk of the Plan's claims to provide medical care up to the amount at which the stop loss insurance carrier would start paying the claims.

11. The Plan, as proposed by LEA, was to be self-insured by Providence with stop loss insurance. The stop loss insurance would pay any individual claim above $75,000 (specific limit) and the aggregate above all claims if the total claims for the Plan exceeded $1,043, 215.

12. The Plan was to be funded through Providence's deduction of certain amounts from employee wages as well as employer contributions from Providence rather than pay premiums to

an insurance company and let the insurance company accept the risk.  The goal of moving to a self-insured plan was to lower Providence's total health plan expenditures.

13. In the "Health Benefit Proposal" issued by LEA to Providence on November 6, 2017 ("2017 LEA Proposal"), LEA estimated the "Maximum Total Plan Cost" (125% of expected claims) to be $979,790.76.[1]  This amount included fixed costs (stop loss premiums plus administrative fees and the anticipated health and pharmacy claims) and was presented by LEA as the "worst case scenario" for the amount of money Providence would need to pay to fund claims for participants for the Plan year beginning December 1, 2017 and ending November 30, 2018.  Stop-loss insurance, would be responsible for the claims above the "worst case scenario."

14. In reliance upon the 2017 LEA proposal, Providence agreed to convert its company health insurance plan from a fully insured health plan to a self-insured health plan to provide its health insurance coverage to its employees.

15. In further reliance on the 2017 LEA Proposal, Providence began funding the self-insured plan with the necessary employer and employee contributions as determined by LEA.

16. As part of the transition from a fully insured plan to a self-insured plan, Providence entered into an Administrative Services Agreement with LEA as of December 1, 2017 (the "Agreement"), whereby, among other things, LEA agreed to serve as the third party administrator for the Plan.  The term of the Agreement was December 1, 2017, through November 30, 2018.

17. As of December 1, 2017 and pursuant to the Plan and under ERISA, 29 U.S.C. §1002(16)(B), Providence was the named Plan Sponsor.

18. Pursuant to the Agreement, and under ERISA, 29 U.S.C. § 1002(16)(A), LEA was delegated the duty to make initial claims determinations and to comply with ERISA requirements.

---

[1] The 2017 Aggregate limit was $979,791.00 according to the proposal.  LEA used $1,043,215 as the 2017 Aggregate number in the 2018 Proposal.

19. Section 4.2 of the Agreement provides that:

> Plan Sponsor hereby delegates to Claims Administrator, and/or its subcontractors, authority to make initial Claims determinations on Plan Sponsor's behalf with respect to Claims for benefits under the Plan. Claim Administrator's administration shall be in compliance with all applicable laws including, but not limited to ERISA, ACA and HIPPA.

20. Pursuant to ERISA, 29 U.S.C. §1002(21), LEA was a fiduciary of the Plan.

21. Specifically, LEA was a fiduciary by virtue of its handling of ongoing Plan administration, accounting, managing contributions, payment of claims and other details for the Plan. Pursuant to the Agreement, LEA was required to provide reports to Providence to track the Plan funding, claims and expenses.

22. Pursuant to Section 4.3 of the Agreement, LEA was also to perform its duties using "the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use …."

23. Pursuant to the Agreement, LEA also agreed to indemnify Providence for certain liabilities and losses that Providence may incur or suffer as a result of LEA's misconduct.

24. Section 4.6 of the Agreement provides as follows, in relevant part:

> The Claims Administrator will indemnify, defend and hold the Plan Sponsor and its respective directors, officers and employees harmless from and against any and all claims, suits, actions, liabilities, losses, fines, penalties, damages and expenses of any kind including, but not limited to court costs and attorney's fees, which Plan Sponsor may suffer or incur as a result of any dishonest, fraudulent, negligent, or criminal act or omission of the Claims Administrator or its employees …

25. Section 11. 3 of the Agreement provides as follows:

> Claims Administrator agrees to indemnify and hold harmless the Plan and Plan Sponsor and its directors, officers and employees against any loss, costs, liabilities and expenses (including, but not limited to, attorneys' fees and court costs) resulting from or in connection with any function Claims Administrator has undertaken, or which is required of Claims

Administrator, pursuant to this agreement where it has been determined that the liability therefore was the result of its negligence, imprudence, willful misconduct, malfeasance, fraudulent acts, or breach of applicable law; provided, however, that Plan Sponsor shall remain liable for the payment of all Claims under the Plan.  No termination of this Agreement shall reduce Claims Administrator's obligations under this provision.

26. Pursuant to the Agreement, LEA also agreed that all documents related to the payment of claims shall be the property of Providence.  Section 9.4 of the Agreement provides:

> All documents relating to the payment of Claims shall be the property of Plan Sponsor, subject to the Claims Administrator's right to possession and use during the continuance of this Agreement. Following termination of this Agreement, Plan Sponsor has the right, upon thirty (30) days advance written request, to have available documentation returned to it, at no cost.

27. In entering the Agreement, LEA also agreed to, at Providence's request, comprehensively audit its claim payment records.  Specifically, Section 10.1 of the Agreement provides:

> Also, on an annual basis, Plan Sponsor has the right to request, at its own expense, a comprehensive audit of Claim payment records to assure the administration of the Plan is performed according to the terms of the Agreement and the Plan Document. These audits will be conducted only for Claims processed and filed within the previous two (2) years of the date the audit is requested and according to the audit procedures the Parties agree to prior to the start of the audit.

28. LEA was also required, per the 2017 LEA Proposal, to handle the administration of stop loss insurance coverage for the Plan by submitting all claims to the stop loss insurer, U.S. Fire Insurance Company, in order for Providence (or the Plan) to be reimbursed for medical claims that exceeded the specific and aggregate claim deductibles under the Plan.

29. At the end of November 2018, the Plan's total costs were $2,009,400.00.  This is more than double the estimated costs to the Plan as stated by LEA.

30. LEA's proposal to Providence to continue and renew the self-insured plan (the "2018 LEA Proposal") for the period from December 1, 2018 through November 30, 2019 (the

5

"2018 Plan Year"), showed that total health plan expenditures were $1,061,092 through nine months (December 1, 2017 through August 31, 2018). This total expenditure included administration, broker fees and claims.

31. Based upon the representations of LEA, the Plan purportedly incurred $948,308 in claims and expenses during the last three months of the Plan year.

32. According to information provided by LEA, stop loss insurance paid $929,610.92 for the December 1, 2017 – November 30, 2018 Plan year (hereinafter "2017 Plan Year").

33. Other information provided by LEA dated May 7, 2019 indicates that there was approximately $56,957.05 in additional monies to be received by the Plan from the stop loss carrier, which would have further reduced the amount owed by Providence to the Plan.

34. Based upon the information from LEA, the Plan was fully funded and all claims were paid for the 2017 Plan Year because of payments from Providence and the payments from the stop loss carrier.

35. Prior to December 1, 2018, LEA presented the 2018 LEA Proposal to Providence to continue and renew the self-insured Plan for the 2018 Plan Year. In this proposal, the total health Plan expenditure for 2017 was projected to be $1,727,027.00; LEA estimated the total costs, including administrative and stop loss insurance premiums, for the Plan for 2018 to be $2,038,848.00. Based on such proposal, Providence renewed the Agreement for the 2018 Plan Year.

36. Based upon the 2018 Proposal submitted to Providence by LEA, the total costs to Providence for the 2017 and 2018 Plan Years should not have exceeded $3,765,875.00, comprised of $1,727,027.00 for the 2017 Plan Year and an estimate of $2,038,848.00 for the 2018 Plan Year.

37. Providence terminated the Plan (and the Agreement) early, effective as of August

31, 2019, and went to a fully insured health plan three months prior to the end of the 2018 Plan Year.

38. Over the course of the Agreement between Providence and LEA, which spanned a total of 21 months, Providence, at LEA's direction, funded the Plan with approximately $2,901,495.04 in employer and participant contributions.

39. Since Providence exercised its right pursuant to Section 12 of the Agreement to terminate the Agreement three months prior the end of the 2018 Plan Year, the Plan only incurred claims on a self-insured basis from September 1, 2018, through August 31, 2019 during the 2018 Plan Year.

40. Based upon LEA's calculations, the amount of employer and employee contributions to the Plan during the 2018 Plan Year should have been close to the amount necessary to pay all claims incurred by the self-insured Plan through August 31, 2019.

41. As of September 1, 2019, the Plan was fully insured and Providence was no longer directly liable for self-insuring the Plan claims and the risk of funding claims was transferred to an insurance company.

42. From September 1, 2019, through November 30, 2019, Providence paid approximately an additional $90,000 for run out claims (claims incurred but not received prior to the termination of the arrangement with LEA). The run-out period terminated as of November 30, 2018, and the substantial majority of the run-out claims should have been resolved during this time.

43. Pursuant to its rights under the Agreement and under ERISA, Providence requested information from LEA on multiple occasions to support the amounts that were being required to

fund the Plan because the amounts were substantially higher than what was stated in the 2018 Plan Year proposal.

44. Pursuant to its rights under the Agreement and under ERISA, Providence further requested information from LEA regarding which claims had been paid and when, including the total claims that are outstanding and the amount allowed under the terms of the Plan. Providence needed this information in order for it to process outstanding claims based on the Plan discounts and the total employee responsibility.

45. As of the date of this Complaint, LEA has not provided the complete information requested by Providence as required pursuant to the Agreement. In fact, in June 2020, in response to Providence's requests to it for reports reflecting the most up-to-date outstanding claims in order to proceed with negotiating and paying claims with medical providers, LEA responded that it needed to "reprocess" internally to accurately reflect which claims were sent, and represented to Providence that it would update "next week". LEA thereafter advised Providence that the claims report was taking longer than expected, that it was working to expedite the report, and that it would let Providence know when it had an update. This delay in providing updated claims data was unreasonable and inexplicable because the run-out claims period had ended November 2019. LEA sent an Excel spreadsheet in July 2020 (the "July 2020 Spreadsheet"), which included most of the information requested, but which, critically, still did not reflect the amount of each claim for which the patient was responsible for payment or the deductible incurred by the participants in the Plan.

46. Without having complete information regarding outstanding claims, Providence has been unable to determine the correct amounts owed. As a result, several claims remain unpaid and medical providers are now seeking payment from the employee participants.

8

47. Based upon the July 2020 Spreadsheet, LEA claims that Providence owes an additional $1,294,953.00 for Plan claims over and above the amount of $2,901,495.04 that Providence funded through November 2019.

48. According to LEA, Providence should pay $4,196,448.04 for **21 months** of Plan coverage when the estimated "worst case" proposal from LEA stated that amount the Providence would pay for **24 months** of coverage is $3,765,875. LEA has not provided any explanation for the difference in the claim amounts.

49. The information provided in the July 2020 Spreadsheet reflected that LEA has mismanaged Plan claims and breached the terms of the Agreement. For example, one of the claims included on the July 2020 Spreadsheet reflects a claim service date of December 12, 2017. LEA received the claim in April 2018. According to LEA, the amount allowed under the Plan for this claim is approximately $46,000.00, and the claim should have been filed with the stop-loss carrier during the 2017 Plan Year. By failing to process this claim in a timely fashion, LEA caused Providence to remain liable for it, even though it should have been paid by the stop-loss carrier.

50. Upon information and belief, LEA has mismanaged numerous similar Plan claims.

51. Participant claims for the Plan have remained unpaid for months and Providence is unable to obtain the necessary data from LEA to pay the claims. LEA's failure to provide requisite information is causing Plan participants to receive notices regarding non-payment of claims and additional stress.

52. The time period for filing claims under the Plan expired August 31, 2020.

53. LEA has failed and refused to do the following in violation of its obligations pursuant to the Agreement and ERISA: (1) provide timely and accurate accounting and financial information, (2) process claims, (3) pay medical claims timely, and (4) to account for stop loss

payments received.  As a result of its inaction, Providence and/or Plan participants are now left responsible for these medical expenses.

54. Upon information and belief, LEA failed to submit certain medical claims to the stop loss insurer in a timely manner; therefore, those claims were denied by the stop loss insurer and Providence may now be left responsible for those claims.

55. Upon information and belief, LEA received reimbursements from the stop loss insurer for certain medical claims and used those funds to pay other Plan claims that it had failed to process in a timely manner.

56. LEA has continuously acted dilatory in managing claims and has failed and refused to provide claim information to Providence in a timely manner.

57. Due to LEA's delay in processing claims, Providence has been deprived of its stop loss coverage, which in turn led to Providence being left to fund claims that would have otherwise been covered by its stop loss insurer.

58. Section 13.1 of the Agreement provides, in relevant part, that "any disputes arising under this Agreement shall be heard only before the federal courts located in the Eastern District of New York, and the parties shall not contest jurisdiction or venue thereof."

## SPECIFIC CAUSES OF ACTION

## COUNT I

### BREACH OF FIDUCIARY DUTIES
### UNDER 29 U.S.C. § 1109 (ERISA § 409)

59. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

60. 29 U.S.C. § 1109 provides as follows:

    (a)    Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

61.    29 U.S.C. § 1104(a)(1) requires a plan fiduciary to discharge its duties with respect to a plan solely in the interest of plan participants and (a) for the exclusive purpose of providing benefits to participants; (b) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (c) by diversifying the investments of the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (d) in accordance with the documents and instruments governing the plan insofar as the documents and instruments are consistent with Title I of ERISA.

62.    Pursuant to ERISA, LEA is a fiduciary under the Plan.

63.    LEA was a fiduciary by virtue of its handling of ongoing Plan administration, accounting, managing contributions, payment of claims and other details for the Plan.

64.    LEA has violated its fiduciary duties by failing and refusing to provide accurate and timely claims data to Providence.

65.    LEA has violated its fiduciary duties by failing to use the requisite "care, skill, prudence and diligence" to fulfill its obligations in paying claims timely and accurately. As a result, Providence has suffered damages in that it lost the ability to submit claims to its stop loss insurer for coverage. As a result, Providence has had to pay significantly more than should have

been required in order to fund claims, and substantially more than LEA estimated its maximum claims liability to be. Providence is entitled to all equitable and legal remedies available under ERISA including surcharge, restitution and the like.

## COUNT II

**CLAIM FOR EQUITABLE ACCOUNTING**
**ARISING UNDER 29 U.S.C. § 1132; ERISA § 502(a)(3) and the AGREEMENT**

66. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

67. 29 U.S.C. § 1132(a)(3) provides that a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

68. LEA has violated its obligations under 29 U.S.C. § 1132(a)(3) and the Agreement by not providing Providence information necessary for the operation and administration of the Plan. Section 9.4 of the Agreement provides that all claims data is the property of Providence. Providence, as a Plan fiduciary, has an obligation to determine how the assets of the Plan were managed and paid by LEA.

69. LEA has failed and refused to provide accurate claims data clearly reflecting when claims were received, processed and paid (if they were paid).

70. Providence is now being pursued by providers to pay outstanding claims. LEA has failed to provide adequate information for Providence to be able to determine the patient responsibility amount.

71. As a result of LEA's failure to provide this vital information, Providence, as a Plan fiduciary, seeks an equitable accounting. Specifically, Providence seeks data for outstanding

claims including participant name, date of claim, Plan discount and employee total responsibility.

72. Injunctive relief is immediately necessary to prevent irreparable harm to Providence and should be granted.

## COUNT III
## NEGLIGENCE

73. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

74. LEA held itself out as a capable third party administrator with extensive knowledge and expertise in the area of claims administration.

75. Under the Agreement and otherwise, LEA owed a duty of care to Providence to "use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise with like character and with like aims."

76. LEA owed a duty of care to Providence to provide timely and accurate claims administration and payment and to provide claims information to Providence in a timely and accurate manner.

77. LEA breached its duty to Providence by failing to process medical claims in a timely manner.

78. LEA further breached its duty to Providence by failing and refusing to provide accurate claims data, even when requested by Providence on multiple occasions.

79. Providence relied on LEA to process claims in a timely and accurate manner.

80. As a direct and proximate result of LEA's breaches set forth above, Providence has been damaged because, due to LEA's failing to process claims as they were received, Providence

was unable to bill claims to its stop loss insurance carrier to cover claims in excess of the specific and/or aggregate minimum claim amount. Therefore, Providence has been required to fund claims that would have otherwise been covered by its stop loss policy.

81. As a result of LEA's negligence, Providence is entitled to damages in an amount to be determined at trial but believed to be in excess of $1,500,000. In addition, because LEA's conduct was willful, wanton and egregious, Providence is entitled to punitive damages in the amount of $500,000.

## COUNT IV

## BREACH OF CONTRACT

82. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

83. In 2017, Providence entered into the Agreement which required LEA to administer the Plan for the benefit of the Plan and Plan participants.

84. Providence has been and continues to be ready, willing and able to perform all of its obligations pursuant to the Agreement.

85. LEA breached the Agreement with Providence in several ways, including, but not limited to, by failing to:

    a. administer the Plan (Section 4.1 of the Agreement);

    b. provide appropriate coverage (Schedule B of the Agreement);

    c. maintain and provide proper records (Sections 9.1, 9.4 of the Agreement);

    d. provide reporting on financial matters relevant to claims made by Providence's Plan participants and funding for the Plan (Sections 9.1, 9.4 of the Agreement);

    e. provide claims support to Providence and its employees (Schedule B of the Agreement);

      f.      provide a comprehensive audit of claim payment records (Section 10 of the Agreement);

      g.      provide services pursuant to the Agreement in a timely, workmanlike manner and in accordance with the generally accepted standards for plan administrators (Schedule B of the Agreement); and

      h.      to pay the claims of Providence's employees (Schedule B of the Agreement).

86. As a direct and proximate result of LEA's breaches, Providence has been and will continue to be damaged in that it has been and will be required to pay claims that would have otherwise been covered by its stop loss insurer.

## COUNT V

## INDEMNIFICATION

87. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

88. Section 4.6 of the Agreement provides as follows, in relevant part:

> The Claims Administrator will indemnify, defend and hold the Plan Sponsor and its respective directors, officers and employees harmless from and against any and all claims, suits, actions, liabilities, losses, fines, penalties, damages and expenses of any kind including, but not limited to court costs and attorney's fees, which Plan Sponsor may suffer or incur as a result of any dishonest, fraudulent, negligent, or criminal act or omission of the Claims Administrator or its employees …

89. Section 11. 3 of the Agreement provides as follows:

> Claims Administrator agrees to indemnify and hold harmless the Plan and Plan Sponsor and its directors, officers and employees against any loss, costs, liabilities and expenses (including, but not limited to, attorneys' fees and court costs) resulting from or in connection with any function Claims Administrator has undertaken, or which is required of Claims Administrator, pursuant to this agreement where it has been determined that the liability therefore was the result of its negligence, imprudence, willful misconduct, malfeasance, fraudulent acts, or breach of applicable law;

15

provided, however, that Plan Sponsor shall remain liable for the payment of all Claims under the Plan. No termination of this Agreement shall reduce Claims Administrator's obligations under this provision.

90. Providence's employees/Plan participants have received and continue to receive letters and phone calls from their healthcare providers and third-party collection agencies demanding payment for claims submitted to, but not processed or paid by, LEA.

91. Providence, as Plan Sponsor, has suffered and continues to suffer damages, including but not limited to legal fees and costs, based on the negligent actions and omissions of LEA, and based upon LEA's negligence, imprudence, willful misconduct, malfeasance, fraudulent acts, and breaches of applicable law with respect to functions required of LEA pursuant to the Agreement.

## COUNT VI

## SPECIFIC PERFORMANCE

92. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

93. Providence and LEA had a valid and enforceable contract.

94. Providence has been and continues to be ready, willing and able to perform its obligations under the Agreement.

95. LEA has failed and refused to perform its obligations to provide Providence with documentation concerning claims as required by the Agreement and has no valid justification for its failure and refusal to do so.

96. There is no other adequate remedy at law because Providence needs the documentation in the possession of LEA to fulfil its obligations to make sure the Plan's claims are paid and the Plan's assets were managed prudently.

WHEREFORE, Providence respectfully demands judgment against LEA as follows:

(a) Awarding Providence damages due in an amount to be determined at trial, but believed to be approximately $1,500,000, as a result of LEA's failure to timely process claims and to submit claims to the stop loss insurer, plus pre-judgment interest accrued thereon until the date of judgment;

(b) Awarding Providence punitive damages in connection with Counts I and III in an amount to be determined at trial, but believed to be in excess of $500,000 based on LEA's willful and wanton conduct;

(c) Finding that LEA's acts and omissions constitute breaches of fiduciary duties under ERISA and awarding appropriate relief under 29 U.S.C. §1109;

(d) Awarding Providence other appropriate equitable relief, to redress violations of ERISA and the Agreement or to enforce any provisions of ERISA or the terms of the Plan;

(e) Awarding Providence attorneys' fees under 29 U.S.C. §1132(g)(1), court costs and all other reasonable costs incurred; and

(f) Awarding such other and further legal or equitable remedy or relief as the Court may deem just and proper.

Dated: New York, New York
October 21, 2020

MORRISON COHEN LLP

By:　/s/ Jay R. Speyer
　　　Jay R. Speyer

909 Third Avenue
New York, New York 10022
(212) 735-8600
jspeyer@morrisoncohen.com

-and-

HOLIFIELD & JANICH, PLLC
Al Holifield (*pro hac vice* forthcoming)
11907 Kingston Pike, Suite 201
Knoxville, Tennessee 37934
(865) 566-0115
aholifield@holifieldlaw.com

*Attorneys for Plaintiff*