UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
: 
THE PROVIDENCE GROUPS, LLC,  : Case No. _____
:
                 Plaintiff, :
:
            v. : **DECLARATION OF**
: **GRETCHEN COX IN**
OMNI ADMINISTRATORS INC. d/b/a/ LEADING : **SUPPORT OF MOTION FOR**
EDGE ADMINISTRATORS, : <u>**PRELIMINARY INJUNCTION**</u>
:
                 Defendant. :
:
:
------------------------------------------------------------------ X

      I, Gretchen Cox, declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

      1.     I am a registered nurse and an employee of Plaintiff, The Providence Groups, LLC ("Providence") where I am currently the Director of Education for PRS, a Providence affiliate that sources and places nursing staff with healthcare providers. I respectfully submit this declaration in support of Providence's motion for a mandatory preliminary injunction. The information set forth in the Declaration is based on my personal knowledge.

      2.     Providence provides services including management, back office and consulting to those operating senior living facilities and other skilled nursing, assisted living, memory care and independent living facilities throughout the United States. In my role as Director of Education for PRS, I am one of the individuals responsible for handling Providence's employee health benefit plan (the "Plan").

A. **Providence Converts To A Self-Insured Plan And Engages Leading Edge Administrators To Administer The Plan**

3. In 2017, Providence was interested in learning about and was presented with the opportunity to self-insure the Plan by Leading Edge Administrators ("LEA"). LEA issued a proposal to Providence as of November 6, 2017 ("2017 LEA Proposal") providing for a self-insured health plan with an effective date of December 1, 2017. A true and accurate copy of the 2017 Proposal is attached hereto as Exhibit 1.

4. By self-insuring the Plan, Providence would be accepting the risk of the Plan's claims to provide medical care up to the amount at which the stop loss insurance carrier would start paying the claims.

5. The Plan, as proposed by LEA, was to be self-insured by Providence with stop loss insurance. The stop loss insurance would pay any individual claim above $75,000 (specific limit) and the aggregate above all claims if the total claims for the Plan exceeded $979,790.76. (*See* Ex. 1 at 15.)

6. In the 2017 LEA Proposal, LEA estimated the "Maximum Total Plan Cost" (125% of expected claims) to be $979,790.76. This amount included fixed costs (stop loss premiums plus administrative fees and the anticipated health and pharmacy claims) and was presented by LEA as the "worst case scenario" for the amount of money Providence would need to pay to fund claims for participants for the Plan year beginning December 1, 2017 and ending November 30, 2018. Stop-loss insurance would be responsible for the claims in excess of the "worst case scenario."

7. Based upon LEA's presentation to it, Providence created a self-insured health plan for the Plan year commencing on December 1, 2017 and ending on November 30, 2018.

8. Providence engaged LEA to provide claims administration services for the self-insured Plan. A true and accurate copy of the Administrative Services Agreement, dated as of

December 1, 2017, between Providence and LEA (the "Agreement") is attached hereto as Exhibit 2.

9. LEA thereafter proposed to Providence that Providence should continue and renew the self-insured Plan (the "2018 LEA Proposal") for the period from December 1, 2018 through November 30, 2019 (the "2018 Plan Year"). The 2018 LEA Proposal showed that total health plan expenditures were $1,061,092.00 through nine months (December 1, 2017 through August 31, 2018). This total expenditure included administration, broker fees and claims. A true and accurate copy of the 2018 LEA Proposal is attached hereto as Exhibit 3.

10. Based upon the 2018 Proposal submitted to Providence by LEA, the total costs to Providence for the 2017 and 2018 Plan Years should not have exceeded $3,765,875.00, comprised of $1,727,027.00 as the "Maximum Total Plan Cost" (125% of expected claims) for the 2017 Plan Year and an estimate of $2,038,848.00 as the "Maximum Total Plan Cost" (125% of expected claims) for the 2018 Plan Year.[1]

11. Providence renewed the self-insured Plan for the 2018 Plan year. A true and accurate copy of the 2018 Summary Plan Description for the Plan is attached hereto as Exhibit 4.

12. Over the course of LEA's administration of the Plan, which spanned a total of 21 months, Providence, at LEA's direction, funded the Plan with approximately $2,901,495.04 in employer and participant contributions.

---

[1] The 2017 "Maximum Total Plan Cost" (125% of expected claims) was $979,791.00 as stated by LEA in the 2017 LEA Proposal. (*See* Ex. 1 at 15.) LEA indicated that the "Maximum Total Plan Cost" (125% of expected claims) for the 2017 Plan year was $1,727,027 in its 2018 LEA Proposal. (*See* Ex. 3 at 13.) It is unclear why the 2018 LEA Proposal reflects that the maximum exposure of the Plan for the 2017 Plan year is $1,727,027, which is $747,236 higher than the maximum exposure stated in the 2017 LEA Proposal. In combining the proposed "Maximum Total Plan Cost" (125% of expected claims) in the 2017 LEA proposal with the maximum number reflected in the 2018 LEA Proposal, the total amount of money that Providence should have spent on the Plan for two years would be $3,018,639.

3

13. Providence exercised its right pursuant to Section 12 of the Agreement to terminate the Agreement three months prior the end of the 2018 Plan Year. Accordingly, the Plan only incurred claims on a self-insured basis from September 1, 2018, through August 31, 2019 during the 2018 Plan Year, and only incurred claims on such basis for a total 21 months, not the expected 24 months.

B. **Upon The Termination Of The Plan, Providence Has Continuously Requested Much Needed Claims Data From LEA, But LEA Has Failed To Provide The Urgently Needed Information Despite Repeated Requests And Its Clear Obligation To Do So**

14. After the termination of the Agreement and the run-out time period for claims, which was November 30, 2019, I began requesting (on behalf of Providence) claims data from LEA so that Providence could continue to process claims uninterrupted.

15. LEA should have records regarding the Plan administration and payments from December 1, 2017 through at least November 30, 2019. Pursuant to the terms of the Plan, claims can be filed up to one year from the date of service. Therefore, the last day claims could be processed for payment pursuant to the terms of the Plan was August 31, 2020. This is the data that Providence has been seeking from LEA to no avail.

16. Specifically, after not receiving required reports from LEA with needed information pursuant to the Agreement, by email dated May 13, 2020 to Avrumi Freidman, Director of Cost Containment at LEA, I requested that LEA provide Providence with a spreadsheet of outstanding claims, the date of claims, the Plan discount and the employee responsibility for all outstanding claims. A true and accurate copy of that is attached hereto as Exhibit 5.

17. By email to LEA dated May 14, 2020, Al Holifield, Providence's counsel, reiterated Providence's request for such information and attached the relevant portions of the

Agreement reflecting that Providence is entitled to the requested information. A true and accurate copy of that email is attached hereto as Exhibit 6.

18. Having not yet received the required information, on June 18, 2020, again through counsel, Providence again requested information to pay the remaining outstanding health claims. True and accurate copies between Mr. Holifield and Mr. Friedman, dated June 17 and June 18, 2020, concerning such request are attached hereto as Exhibit 7.

19. On June 30, 2020, still having not received the required information, I was advised told by Mr. Friedman that it was taking longer than expected for LEA to provide the updated processed claims list. A true and accurate copy of the email communication from Mr. Friedman reflected such advice is attached hereto as Exhibit 8.

20. On July 14, 2020, after yet further requests to LEA by phone and email without LEA providing the required information, Mr. Friedman emailed me and stated that he "anticipated a final report by Friday." A true and accurate copy of that email is attached hereto as Exhibit 9.

21. By email dated July 17, 2020, I was further assured by Mr. Friedman that I would be receiving an updated claim listing that day. A true and accurate copy of that email is attached hereto as Exhibit 10.

22. Still having not received the required information, by email to Mr. Friedman dated July 20, 2020, I once again requested that LEA provide Providence with updated information in order that it could process claims. A true and accurate copy of that email is attached hereto as Exhibit 11.

23. For months, I was given excuses by LEA as to why its reports were not up-to-date or were incomplete, even though the run-out period for all claims ended as of November 30, 2019. In my discussions with LEA, I specifically indicated that Providence needed this information

5

urgently to process the outstanding claims for its employees. However, LEA continually failed and refused to provide said information.

24. Finally, in July of 2020, LEA sent an Excel spreadsheet with some of the information requested (the "July 2020 Spreadsheet"), but it still did not reflect the amount of employee responsibility. A true and accurate copy of the July 2020 Spreadsheet, redacted to comply with the Health Insurance Portability and Accountability Act ("HIPAA"), is attached hereto as Exhibit 12. Specifically, the July 2020 Spreadsheet omits the current deductible and co-pays for each participant. Without this employee responsibility information, Providence is unable to identify the total amount owed for each participant's health claim. LEA's actions and dilatory behavior are thus frustrating the successful administration of the Plan for the benefit of Providence's employees. Further, the July 2020 reflects at least one unexplained discrepancy suggesting mismanagement of claims and possible malfeasance by LEA. Specifically, one of the claims contained in the July 2020 Spreadsheet reflects an incurred date of December 2017 and a date received by LEA as April, 2018. According to LEA, the amount allowed under the Plan for this claim is approximately $46,000.00, and the claim should have been filed with the stop-loss carrier during the 2017 Plan Year. By failing to process this claim in a timely fashion, LEA caused Providence to remain liable for it, even though it should have been paid by the stop-loss carrier.

25. According to the July 2020 Spreadsheet, LEA claims that Providence owes an additional $1,294,953.00 over the $2,901,495.04 contributed by Providence and participants to pay for Plan claims.

26. As of this date, LEA has still failed to provide a full accounting of the required information needed by Providence to continue to process claims for its employees.

C. **Providence Urgently Needs The Information It Has Requested From LEA; Without Such Information Which LEA Is Obligated To Provide, Providence And The Plan Participants Will Suffer Irreparable Harm**

27.     The records that Providence is seeking from LEA on this application are necessary in order that Providence can obtain a full understanding of the claims, management, stop-loss claim management and payment administration of the Plan so that it can protect the interests of Plan participants.  It is unclear why LEA would allege in July 2020 that Providence owes $1,294,953.00.  Providence would not owe this amount of money if the stop-loss insurance had been administered properly.  Upon information and belief, LEA used proceeds from the stop-loss carrier for certain claims to pay other health plan claims for which such proceeds were not intended.  This decision on how to use Plan assets was not made by Providence and was within the sole discretion of LEA as were many of its responsibilities pursuant to the Agreement.  Without a preliminary injunction mandating that LEA immediately provide Providence with the records that LEA contractually agreed to provide to Providence, Providence will be unable to properly determine the amount owed for its employees' claims under the Plan.

28.     As a result of LEA's continuing failure to provide the required information, Providence employees are now being pursued by medical providers for the remaining outstanding amounts owed for medical care received, with their access to their preferred providers possibly being restricted as a result.  Providence's employees have also expressed concern to it about being reported to credit agencies and have also expressed their dissatisfaction and frustration with Providence regarding the administration of the Plan.  Providence is unable, however, to address its employees' concerns without obtaining the information requested from LEA.

29. In conclusion, LEA has repeatedly ignored Providence's requests for the necessary claim information and/or failed to provide the required information for some time now, and such failure threatens Providence's ability to pay Plan participant claims and is otherwise threatening among other things, Providence's relationships with its employees and their credit status. Claims are pending and the information is required now. Accordingly, Providence respectfully requests that the Court grant this motion in its entirety.

Dated: Goodlettsville, Tennessee
       October 21, 2020

                                                _____
                                                GRETCHEN COX, RN