UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                    :

THE PROVIDENCE GROUPS, LLC,         :   Case No.

                  Plaintiff,                   :

                  v.                           :

OMNI ADMINISTRATORS INC. d/b/a/ LEADING  :
EDGE ADMINISTRATORS,

                  Defendant.                :

------------------------------------------------------------------- X

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
# OF MOTION FOR PRELIMINARY INJUNCTION

Jay R. Speyer
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600

Al Holifield (*pro hac vice* forthcoming)
HOLIFIELD & JANICH, PLLC
11907 Kingston Pike, Suite 201
Knoxville, Tennessee 37934
(865) 566-0115

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

                                                                                                         **Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT ............................................................................................................................... 5

    I.     PROVIDENCE HAS A RIGHT TO INJUNCTIVE RELIEF AGAINST LEA
          PURSUANT TO ERISA'S PROVISIONS AUTHORIZING CIVIL
          ENFORCEMENT ............................................................................................................. 5

    II.    A PRELIMINARY INJUNCTION IS APPROPRIATE UNDER THE
          CIRCUMSTANCES PRESENTED HERE ..................................................................... 7

          A.   Absent Injunctive Relief, Providence Will Be Irreparably Harmed ......................... 8

          B.   Plaintiff Has Made A Clear Showing That It Is Substantially Likely to Succeed
               On The Merits ....................................................................................................... 11

          C.   In The Alternative, Extreme Or Very Serious Damage Will Result In The
               Absence of an Injunction ...................................................................................... 12

          D.   The Public Interest ................................................................................................ 12

          E.   No Bond Is Necessary ........................................................................................... 13

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cacchillo v. Insmed, Inc.*,
    638 F.3d 401 (2d Cir. 2011)..................................................................................7

*Chao v. Merino*,
    452 F.3d 174 (2d Cir. 2006)..................................................................................5

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010)....................................................................................7

*DeWitt Stern Grp., Inc. v. Eisenberg*,
    No. 13-cv-3060, 2013 U.S. Dist. LEXIS 78598 (S.D.N.Y. June 3, 2013) ...............13

*Doctor's Assocs. v. Stuart*,
    85 F.3d 975 (2d Cir. 1996)....................................................................................13

*F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*,
    597 F.2d 814 (2d Cir. 1979)..................................................................................7

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007)....................................................................................8

*Gulf Oil Ltd. P'ship v. Senerci*,
    No. CV-12-4731, 2013 U.S. Dist. LEXIS 13510 (E.D.N.Y. Jan. 30, 2013) ............10

*Harris Tr. & Sav. Bank v. Salomon Smith Barnet, Inc.*,
    530 U.S. 238 (2000)..............................................................................................6

*Islam v. Cuomo*,
    No. 20-CV-2328 (LDH),
    2020 U.S. Dist. LEXIS 133082 (E.D.N.Y. Jul. 28, 2020).......................................8

*LaForest v. Former Clean Air Holding Co.*,
    Nos. 03-9007(L), 03-9043(CON), 03-9045(CON), 03-9313(CON), 03-9357
    (CON), 04-0104-cv(CON),
    2004 U.S. App. LEXIS 11098 (2d Cir. June 7, 2004) ............................................10

*Local #46 Metallic Lathers Union v. Brookman Constr. Co.*,
    No. 12 CV 2180 (ARR)(LB),
    2013 U.S. Dist. LEXIS 134454 (E.D.N.Y. Sept. 19, 2013)....................................7, 8

*Local Union No. 40 of the Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Car-Win Constr., Inc.*,
  88 F. Supp. 3d 250 (S.D.N.Y. 2015)......................................................................6

*N. Am. Soccer League, LLC v. U.S. Soccer Fed., Inc.*,
  883 F.3d 32 (2d Cir. 2018)....................................................................................7

*Really Good Stuff, LLC v. BAP Inv'rs, L.C.*,
  813 Fed. App'x 39 (2d Cir. 2020).......................................................................10

*Rodriguez v. DeBuono*,
  175 F.3d 227 (2d Cir. 1998)..................................................................................8

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995)..................................................................................7, 8

*Trs. of Empire State Carpenters Annuity v. Tri-State Acoustics Corp.*,
  No. 13 CV 5558 (FB)(CLP),
  2014 U.S. Dist. LEXIS 128463 (E.D.N.Y. Jul. 1, 2014)......................................6

*Trs. of the Plumbers Local Union N.1 Welfare Fund v. Arista Plumbing Heating & Piping Corp.*,
  No. 12-CV-5130, 2013 U.S. Dist. LEXIS 185821 (E.D.N.Y. Feb 10, 2013).................. 6, 9-10

*D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*,
  465 F.3d 503 (2d Cir. 2006)..................................................................................7

*Wisdom Imp. Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*,
  339 F.3d 101 (2d Cir. 2003)..................................................................................8

## FEDERAL STATUTES

29 U.S.C. §§ 101 et seq............................................................................... *passim*

29 U.S.C. § 1002..............................................................................................5

29 U.S.C. § 1104..............................................................................................6

29 U.S.C. § 1132......................................................................................1, 5, 6

## FEDERAL RULES & REGULATIONS

Fed. R. Civ. P. 65....................................................................................1, 7, 13

Plaintiff, The Providence Groups, LLC ("Providence" or "Plaintiff"), by and through the undersigned counsel, moves this Court, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and 29 U.S.C. § 1132(a)(3), for a preliminary injunction against defendant Omni Administrators Inc. d/b/a Leading Edge Administrators ("LEA" or "Defendant") mandating that LEA provide a full accounting to Providence of LEA's administration of the Providence health benefit plan (the "Plan") for the time period from December 1, 2017 through August 31, 2020 (the "Motion").[1]

## PRELIMINARY STATEMENT

This action is brought under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 101 et seq. ("ERISA") and the law of the State of New York. LEA, an ERISA fiduciary and third party administrator, over the course of the term of its administrative services agreement with Providence (the "Agreement"), failed to timely process health claims on behalf of Providence employees and participants in the Plan. As a result of LEA's dilatory actions in processing claims, certain claims that should have been submitted to, and paid by, Providence's stop loss insurer were never submitted. Furthermore, Providence has been required to fund the Plan at an amount well in excess of the estimated Plan costs. As set forth in the accompanying Cox Declaration, LEA's delay and failure to provide required claims information is threatening (and causing) substantial and irreparable harm to the Plan (and thus to Providence) and its employee participants. Among other things, LEA's failure and delay has led medical providers to now implement collection efforts directly against the Plan participants for medical services rendered, including threats of lawsuits and reporting balances to credit reporting agencies.

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the accompanying Declaration of Gretchen Cox in Support of Motion for Preliminary Injunction, dated October 21, 2020 (the "Cox Decl.").

Since Providence terminated the Agreement with LEA in August 2019, it has continuously requested claims data from LEA so that it could properly and accurately determine what claims had been paid and when, as well as what claims were still outstanding. This necessary information, which LEA is contractually and otherwise obligated to provide, has still not been provided to Providence. Indeed, LEA's recordkeeping was so flawed that, almost a year after Providence terminated their relationship, LEA indicated that it needed to reprocess its claims report in order to provide accurate claims information. According to a July 2020 spreadsheet containing incomplete information that was prepared by LEA and provided to Providence (the "July 2020 Spreadsheet"), Providence owes an additional $1,294,953 in order to fund outstanding claims. On this spreadsheet, there are claims dating back to December 2017 that were received by LEA in April of 2018 and should have been submitted to the stop loss insurer. These claims have not been paid as of this filing. Upon information and belief, there are several similar claims – and Providence is now left being held responsible. The result is this lawsuit and the pressing need for a mandatory injunction directing LEA to immediately provide Providence with a full accounting of its administration of the Plan. Accordingly, Plaintiff respectfully requests that the Motion be granted in its entirety.

## STATEMENT OF FACTS

The relevant facts are set forth in detail in the accompanying Complaint and the Cox Declaration, together with the exhibits annexed thereto, which are incorporated herein by reference, and thus will not be repeated in full here. A brief recitation of the facts, to the extent relevant to the Motion, is set forth below.

Providence contracted with LEA to administer its self-insured health plan beginning as of December 1, 2017. Pursuant to Section 4.3 of the Agreement, LEA was to perform its duties using

"the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use …." (Cox Decl., ¶ 8, Ex. 2.) LEA administered the Plan for Providence from December 1, 2017 through August 31, 2019 on an "active" basis and contracted to provide run-out claim administration from September 1, 2019 through November 30, 2019. (*Id.*, ¶¶ 14-15.) Providence and its employees have spent over $2.9 million in Plan contributions during the administration by LEA. (*Id.*, ¶12.) LEA had represented that contributions to the Plan for December 1, 2017 through November 30, 2019 would be between $3,018,639 and $3,765,875.[2] (*Id.*, ¶ 10.)

Providence terminated LEA as of August 31, 2019 pursuant to its rights under the Agreement and contracted with LEA to perform run-out claims administration for 90 days. Therefore, LEA should have records regarding the Plan administration and payments from December 1, 2017 through at least November 30, 2019. (*Id.*, ¶ 15.) Pursuant to the terms of the Plan, claims can be filed up to one year from the date of service. (*Id.*) Therefore, the last day claims could be processed for payment pursuant to the terms of the Plan was August 31, 2020. This is the data that Providence is seeking on this application. (*Id.*)

After the termination of the Agreement and the run-out period for claims, which was November 30, 2019, Cox began requesting claims data from LEA so that Providence could continue to process claims uninterrupted. Specifically, she requested a spreadsheet of outstanding claims, the date of claims, the Plan discount and the employee responsibility. (*Id.*, ¶¶ 14-16, Ex. 5.)

On May 14, 2020, through counsel, Providence requested the same information and attached the relevant portions of the Agreement that shows that Providence is entitled to the

---

[2] The reason for the range is the variance in the proposal from LEA during 2017 and 2018. Providence has not received an explanation for the variances.

3

requested information. (*Id.*, ¶ 17, Ex. 6.) On June 18, through counsel, Providence again requested information to pay the remaining outstanding health claims. (*Id.*, ¶ 18, Ex. 7.)

On June 30, 2020, Cox was told by Avrumi Friedman, Director of Cost Containment at LEA, that it was taking longer than expected to get the updated processed claims list. (*Id.*, ¶ 19, Ex. 8.) On July 14, 2020, after further requests, Mr. Friedman responded stating that he "anticipated a final report by Friday." (*Id.*, ¶ 20, Ex. 9.) Again, on July 17, 2020, Cox was assured by Mr. Friedman that she would be receiving an updated claim listing that day. (*Id.*, ¶ 21, Ex. 10.) Per Cox's email to Mr. Friedman on July 20, 2020, she again requested updated information to process claims on behalf of the Plan. (*Id.*, ¶ 22, Ex. 11.) Finally, in July of 2020, LEA sent the July 2020 Spreadsheet with some of the information requested, but it still did not reflect the amount of employee responsibility. (*Id.*, ¶ 24, Ex. 12.) According to the July 2020 Spreadsheet, LEA claims that Providence owes an additional $1,294,953.00 for Plan claims. (*Id.*, ¶ 25.) One of the claims contained in the July 20 Spreadsheet even has an incurred date of December 2017 and shows a date received by LEA as of April, 2018. (*Id..*, ¶ 24, Ex. 12.).

For months, Providence was given excuses as to why the reports were not up to date or were incomplete. In Cox's discussions with LEA, she specifically indicated that Providence would need this information in order to process the outstanding claims for its employees. (*E.g. id.*, ¶ 14.) However, LEA continually failed and refused to provide said information even though LEA is contractually obligated to provide the data to Providence.

Participant claims for the Plan have remained unpaid for months and Providence is unable to obtain the necessary data from LEA to pay the claims. To properly determine what amount is owed by the Plan, in addition to the information provided in the July 2020 Spreadsheet (*see id.*, Ex. 12), Providence needs the amount of deductible incurred by each participant, the co-pay for

4

the medical treatment or procedure, if any, and any other patient responsibility owed by the participant. (*Id.*, ¶ 24.) Without this information, Providence is unable to properly pay the Plan's claims. LEA's actions are frustrating the successful administration of the Plan.

Medical providers are undertaking efforts to collect amounts owed for care rendered to the Plan participants. (*Id.*, ¶¶ 28-29.) The result is that numerous Plan participants' accounts with the providers have been placed in collections. (*Id.*) Plan participants have been receiving and will continue to receive collections letters, delinquency notices, threats of legal action and adverse credit reporting actions. (*Id.*) Providence has suffered and will continue to suffer the loss of goodwill with its employees until the required information is provided by LEA and Plan claims can be properly processed. (*Id.*)

## ARGUMENT

### I.

### PROVIDENCE HAS A RIGHT TO INJUNCTIVE RELIEF AGAINST LEA PURSUANT TO ERISA'S PROVISIONS AUTHORIZING CIVIL ENFORCEMENT

"It is well-settled that ERISA grants the court wide discretion in fashioning equitable relief" to "protect the rights of … beneficiaries." *Chao v. Merino*, 452 F.3d 174, 185 (2d Cir. 2006) (citation omitted). The relief sought here – a preliminary injunction requiring LEA to provide an emergency accounting – falls squarely within the remedies authorized by ERISA.

Providence is entitled to a preliminary injunction against LEA, as a fiduciary,[3] based on LEA's clear failure to follow the "terms of" the Plan that it was charged with administering. Under

---

[3] 29 U.S.C. § 1002(21) provides that, for ERISA purposes, "… a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets … or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21) (2020). LEA was, at all relevant time, a fiduciary pursuant of the Plan pursuant to 29 U.S.C. § 1002(21) in that, among other things, LEA exercised functional control over the Plan's assets and discretion over the processing and payment of claims with Plan assets. (Cox. Decl., ¶29) As set forth in the Agreement, Providence is also a "fiduciary" for the Plan (*Id.*, Ex. 1) and is entitled in such capacity to bring an ERISA claim pursuant to 29 U.S.C. § 1132(a)(3).

5

ERISA's civil enforcement provision, a civil action may be brought

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ….

29 U.S.C. § 1132(a)(3); *see Harris Tr. & Sav. Bank v. Salomon Smith Barnet, Inc.*, 530 U.S. 238, 246 (2000) (finding that equitable relief is appropriate for the purpose of "redressing any violations or enforcing any provisions of ERISA or an ERISA plan") (citation omitted).

LEA has failed to comply with its fiduciary and contractual responsibilities under ERISA. An ERISA fiduciary shall, among other things, (1) "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," (2) act "with the care, skill, prudence and diligence under the circumstances then prevailing," and (3) act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1). Here, LEA has failed to act in accordance with the express provisions of the Agreement, while also failing to act solely in the interest of the Plan participants. (Cox. Decl., ¶¶ 8-26.) Among other things, and most importantly for purposes of the instant application, it has failed and refused to provide accurate accounting of Plan assets and claims paid or to submit to an audit, as required by the Agreement. (*Id*., ¶ 8, Ex. 2 §§ 9.1, 9.4., and 10.) Providence and the Plan participants face imminent and irreparable as a result of LEA's actions and are entitled to equitable relief under ERISA.[4]

---

[4] It is axiomatic that injunctions may be awarded with ERISA serving as the statutory basis for doing so as long as the plaintiff otherwise meets the requirements for an injunction. *See*, *e.g.*, *Trs. of Empire State Carpenters Annuity v. Tri-State Acoustics Corp.*, No. 13 CV 5558 (FB)(CLP), 2014 U.S. Dist. LEXIS 128463 at *18 (E.D.N.Y. Jul. 1, 2014) (grant of permanent injunction under ERISA requiring defendant to comply with an audit in furtherance of plaintiff's desire to account for the defendant's contributions); *Local #46 Metallic Lathers Union v. Brookman Constr. Co.*, No. 12 CV 2180 (ARR)(LB), 2013 U.S. Dist. LEXIS 134454 at *18 (E.D.N.Y. Sept. 19, 2013) (granting preliminary injunction for repeated and continual failure to meet ERISA obligations); *Trs. of the Plumbers Local Union N.1 Welfare Fund v. Arista Plumbing Heating & Piping Corp.*, 12-CV-5130, 2013 U.S. Dist. LEXIS 185821, at *15-25 (E.D.N.Y. Feb 10, 2013) (granting request for preliminary injunction under ERISA directing that the defendant produce books and records); *Local Union No. 40 of the Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Car-Win Constr., Inc.*, 88 F. Supp. 3d 250, 277-78 (S.D.N.Y. 2015) (adopting recommendation to

6

## II.

## A PRELIMINARY INJUNCTION IS APPROPRIATE <u>UNDER THE CIRCUMSTANCES PRESENTED HERE</u>

In the Second Circuit, a party seeking a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed., Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). The "serious questions" standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction. *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30 (2d Cir. 2010); *F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 597 F.2d 814, 815–19 (2d Cir. 1979).

The standard is higher in this case as Providence is requesting an injunction requiring that LEA take action, as opposed to restraining its action. A party seeking such a "mandatory injunction" faces a higher burden. *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995)), *amended*, 480 F.3d 138 (2d Cir. 2007). A "mandatory preliminary injunction" should only be granted "upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011) (citation omitted); *Tom Doherty Assocs., Inc.*,

---

issue permanent injunction for audit of books and records). Indeed, "serious misconduct that violates ERISA obligations" has been held to be ample grounds for an injunction. *Local #46 Metallic Lathers Union*, 2013 U.S. Dist. LEXIS 134454, at * 19 (citation omitted).

7

60 F.3d at 34; *see Islam v. Cuomo*, No. 20-CV-2328 (LDH), 2020 U.S. Dist. LEXIS 133082 at *4 (E.D.N.Y. Jul. 28, 2020).

As set forth below and in the accompanying declaration, Providence is clearly entitled to the relief requested. A mandatory injunction is appropriate to require LEA to take immediate affirmative action to comply with its contractual obligations owed to Providence and those fiduciary obligations imposed upon it by ERISA, all of which LEA has repeatedly failed to adhere to. (*See* Cox. Decl., ¶¶ 8-26, Ex. 2 §§ 9.1, 9.4, and 10.) Serious damage will result from a denial of preliminary relief because in the absence of the information sought from LEA on this Motion, Providence is unable to determine the amounts owed under the terms of the Plan. (*Id.*, ¶¶ 24-27.) The time period for submitting claims expired on August 31, 2020. Such information is urgently needed to prevent irreparable harm that is already occurring and will only increase if further time passes. Accordingly, the Court should grant a mandatory injunction in favor of Providence.

### A. Absent Injunctive Relief, Providence Will Be Irreparably Harmed

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998) (citation omitted). "To satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation and internal quotation marks omitted). Irreparable harm is "harm shown to be non-compensable in terms of money damages." *Wisdom Imp. Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113-14 (2d Cir. 2003).

8

Providence is seeking injunctive relief directing LEA to immediately provide a complete accounting to Providence of LEA's regarding the administration and payment of the Plan's claims. Providence is seeking data that, pursuant to the terms of the Agreement, rightfully belongs to Providence. (Cox. Decl., ¶ 8, Ex. 2 §§ 9.1, 9.4, and 10). Without this data, which LEA has continuously refused to provide, Providence cannot fulfill its duties to the Plan's participants and accurately pay the outstanding claims. (*Id.*, ¶ 24.)

The failure of LEA to provide this necessary and required information and documentation will cause further immediate and irreparable harm to Providence and the Plan's participants, separate and apart from any direct monetary harm that Providence may have suffered through LEA's misconduct in processing claims. Among other things, the failure of LEA to pay the claims of the Plan participants has created issues with medical providers and collection agencies that have caused and will continue to cause substantial harm and hardship to those individuals and to Providence, including potentially imperiling the participants' health care. Plan participants are receiving bills from medical providers on an ongoing basis. (*Id.*, ¶ 28.) This is creating great strain between Providence and its employees, imperiling the employees and impinging on their ability to obtain the medical care they need from their chosen providers. (*Id.*, ¶ 28.) The damage to these relationships, including those between Providence and its employees, and the damage to the fiduciary reputation and goodwill of Providence that is resulting are invaluable and incapable of being remedied by monetary damages. (*Id.*, ¶ 28.) The longer that LEA delays in providing the required claims data, the more this irreparable harm will continue and accumulate.

Courts have recognized that losses analogous to the type suffered here can constitute irreparable harm and or warrant injunctions pursuant to ERISA. *See Trs. of the Plumbers Local Union No. 1 Welfare Fund*, No. 12-CV-5130 (SLT) (VMS), 2013 U.S. Dist. LEXIS 185821, at

9

*15-25 (E.D.N.Y. Feb 10, 2013) (finding irreparable harm to grant preliminary injunction under ERISA directing that the defendant produce books and records because in the absence of an injunction, "[p]laintiffs ha[d] no way of knowing whether [defendant] owe[d] unpaid contributions and, if so, how much"). Indeed, in *Trustees of the Plumbers Local Union No. 1 Welfare Fund*, the Court held that absent an injunction, the ERISA plan at issue could lose contributions while potentially having to pay out benefits and that "[s]hould that happen, Plaintiffs as fiduciaries may breach their fiduciary obligation and suffer a loss of faith and reputation, a circumstance for which monetary damages would be an ineffective remedy." 2013 U.S. Dist. LEXIS 18521, at *23. Similarly, here, Providence is unable to obtain the necessary information to determine the proper amount to pay regarding the participants' claims. (Cox. Decl., ¶¶ 27-28.) The loss of goodwill and reputation, here in the context of Providence's standing with its employees (*see id.*, ¶¶ 28-29), constitutes irreparable harm. *See Really Good Stuff, LLC v. BAP Inv'rs, L.C.*, 813 Fed. App'x 39, 44 (2d Cir. 2020) ("[L]oss of reputation and goodwill constitutes irreparable harm."); *Gulf Oil Ltd. P'ship v. Senerci*, No. CV-12-4731 (SJF)(WDW), 2013 U.S. Dist. LEXIS 13510, at * 6 (E.D.N.Y. Jan. 30, 2013) (in the consumer context, Court held that "the loss of good will constitute irreparable harm and the interruption of the availability of a necessary good can negatively effect the [purchaser]'s good will even if the interruption is brief") (citation omitted)).[5] Accordingly, Providence has demonstrated that irreparable harm which cannot be compensated by monetary damages will occur in the absence of an injunction.

---

[5] Moreover, absent an injunction which will allow Providence to obtain the information necessary to pay the Plan participants' claims to the full extent warranted, its employees' access to the health care provider of its choice may be adversely affected. Courts have held that impinging or reducing access to medical care constitutes irreparable harm. *See LaForest v. Former Clean Air Holding Co.*, Nos. 03-9007(L), 03-9043(CON), 03-9045(CON), 03-9313(CON), 03-9357 (CON), 04-0104-cv(CON), 2004 U.S. App. LEXIS 11098, at *13-14 (2d Cir. June 7, 2004) (holding that reductions in medical coverage constitute irreparable harm).

### B. Plaintiff Has Made A Clear Showing That It Is Substantially Likely To Succeed On The Merits

Here, Providence has met the heightened burden to show its entitlement to a mandatory injunction based on its clear entitlement to the injunctive relief sought on the Motion. (*See supra* at 8.) There is a substantial likelihood that it will prevail, at a bare minimum, on its claim for an accounting based on LEA's breach of the Agreement by not providing the information that it is contractually obligated to provide pursuant to the Agreement and its breach of its fiduciary duties under ERISA (and the statutory authority under ERISA to fashion an equitable remedy to redress such violations (*see supra* at Section I)). Based upon the Agreement between Providence and LEA and the responsibilities undertaken by LEA thereunder, there can be no dispute that Providence is entitled to the claims data that it is requesting herein. Section 9 of the Agreement, in fact, provides as follows:

> 9.1 In addition to the enrolment report specified in Section 5.5, Claims Administrator will provide the Plan Sponsor with access to an electronic copy of a bi-weekly Claim listing. This Claims listing will include those total Claims that Claims Administrator has Paid in that specific month and year, as well as Contributions for that period.
>
> 9.4 All documents relating to the payment of Claims shall be the property of Plan Sponsor, subject to Claims Administrator's right to possession and use during the continuance of this Agreement. Following termination of this Agreement, Plan Sponsor has the right, upon thirty (30) days advance written request, to have available documentation returned to it, at no cost.

(Cox Decl., Ex. 2 §§ 9.1, 9.4.) Section 10.1 also provides for Providence's clear right to an audit. (*Id.*, Ex. 2 § 10.1)

Providence is merely requesting the data that it is its property under the terms of the Agreement. The language is clear and LEA's violation of its obligations under the contract are clear. Therefore, Providence is likely to succeed on the merits of this case, at

11

the very least with regard to its fiduciary duty and breach of contract

### C. In The Alternative, Extreme Or Very Serious Damage Will Result In The Absence Of An Injunction

As set forth in the Cox Declaration, Providence, the Plan and Providence's employees will suffer serious damage as a result of LEA's continuing failure to provide Providence with the required information so that Providence can properly process its employees' claims. (Cox Decl., ¶¶ 14-27.) Among other things, numerous Plan participants' accounts with the providers have been placed in collections. (*Id.*, ¶ 28.) Plan participants have been receiving and will continue to receive collections letters, delinquency notices, and adverse credit reporting actions. (*Id.*) Employees have expressed concern to Providence about being reported to credit agencies and have also expressed their dissatisfaction and frustration with Providence regarding the administration of the Plan. (*Id.*) Providence is unable to address its employees' concerns without obtaining the information requested from LEA. (*Id.*) The damage to Providence's goodwill with its employees is also being directly impacted by the unwillingness of LEA to provide Providence the necessary data to pay claims. (*Id.*, ¶ 29.)

### D. The Public Interest

The instant case does not implicate any public policy concern of any great import that would weigh against granting the requested relief. There is certainly no public policy weighing against the granting of Providence's motion for a preliminary injunction requiring LEA to act in accordance with its obligations under its contract with Providence. Indeed, the only discernible public interest at issue is the general public interest and confidence in the operation and viability of employer sponsored health plans which weighs in favor of granting the application. ERISA, as well as the Agreement, both support the proper administration and payment of Plan claims. LEA's actions directly are frustrating and preventing this from happening.

### E. No Bond Is Necessary

With regard to any bond requirement, "[t]he language of [Fed. R. Civ. P.] Rule 65(c) confers broad discretion on the trial judge to set the amount of the bond, even to dispense with the bond requirement altogether." *DeWitt Stern Grp., Inc. v. Eisenberg*, No. 13-cv-3060, 2013 U.S. Dist. LEXIS 78598, at *16 (S.D.N.Y. June 3, 2013) (citation omitted); *see Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (district court did not abuse its discretion in dispensing with the bond where defendants failed to show that they will likely suffer harm absent posting of the bond).

Here, there is no harm that LEA will suffer if it is directed to perform the obligations that it is required to perform under ERISA and the Agreement. Accordingly, no bond is necessary in this case.

### CONCLUSION

For the reasons set forth herein and in the accompanying papers, Plaintiff respectfully requests that the Court enter an Order granting the Motion in its entirety, directing LEA to immediately provide a full and accurate accounting of all claims paid to date and all claims outstanding, including patient responsibility amounts to Providence, and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 21, 2020

                              MORRISON COHEN LLP

                              By: /s/ Jay R. Speyer
                                  Jay R. Speyer

                              909 Third Avenue
                              New York, New York 10022
                              (212) 735-8600
                              jspeyer@morrisoncohen.com

-and-

HOLIFIELD & JANICH, PLLC
Al Holifield (*pro hac vice* forthcoming)
11907 Kingston Pike, Suite 201
Knoxville, Tennessee 37934
(865) 566-0115
aholifield@holifieldlaw.com

*Attorneys for Plaintiff*