**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

THE PROVIDENCE GROUP LLC,                                    Case No.: 1:20-cv-05067

                Plaintiff,

     -against-

OMNI ADMINSTRATORS INC. d/b/a/ LEADING
EDGE ADMINISTRATORS,

               Defendant.

-------------------------------------------------------------------X

**LEADING EDGE ADMINISTRATOR INC.'S MEMORANDUM OF LAW IN**
**OPPOSITION TO**
**PROVIDENCE'S MOTION FOR A PRELIMINARY INJUNCTION**

RIVKIN RADLER LLP

Kenneth C. Murphy
Barry I. Levy
Brian L. Feld
477 Madison Avenue
New York, NY 10022-5843
(212)455-9555
Casey.Murphy@Rivkin.com

Dated:  November 6, 2020

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT ................................................................................................................... 3

    I.     THE REQUESTED PRELIMINARY INJUNCTION IS NOW MOOT .............. 3

    II.    PROVIDENCE IS NOT ENTITLED TO INJUNCTIVE RELIEF AGAINST LEA ....................................................................................................................... 4

        A.    Legal Standard ........................................................................................ 4

        B.    Providence's Application For Injunctive Relief Must Be Denied Because It Is Based Upon Nothing More Than Allegations and Is Premature. .............. 5

        C.    Providence Has Failed to Establish That It Will Be Irreparably Harmed...... 6

        D.    Providence Has Failed To Make A Clear Showing That It Is Substantially Likely To Succeed On The Merits. ................................................................ 9

        E.    Providence Has Failed To Establish That Extreme Or Very Serious Damage Will Result In The Absence Of An Injunction. ........................................... 17

Conclusion ...................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul Wali v. Coughlin*,
  754 F.2d 1015 (2d Cir. 1985), overruled on other grounds, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987)............................................4

*Adam v. Cutner & Rathkopf*,
  238 A.D.2d 234 (1st Dep't 1997) ......................................................................11

*Anderson v. Mex. Acad. & Cent. Sch.*,
  186 F.Supp. 2d 193 (N.D.N.Y. 2002)..................................................................5

*Ashcroft v. NY State Dept. of Corr. & Community Supervision*,
  2020 US Dist LEXIS 6387 (WDNY Jan. 13, 2020, No. 1:18-CV-00603 EAW)...............4, 10

*Cho v. 401–403 57th St. Realty Corp.*,
  300 A.D.2d 174 (1st Dep't 2002) ......................................................................17

*Cohen v. CASSM Realty Corp.*,
  54 Misc. 3d 256 (N.Y. Sup. Ct. 2016) ................................................................17

*Fishbein v. Miranda*,
  785 F.Supp 2d 375 (SDNY 2011)......................................................................14

*Gulf Oil Ltd. P'ship v. Semerci*,
  2013 US Dist LEXIS 13510 (EDNY Jan. 30, 2013, No. CV-12-4731 (SJF)(WDW)) ......................................................................................9

*Haley v. Teachers Ins. & Annuity Assn. of Am.*,
  2018 US Dist LEXIS 52138 (SDNY Mar. 26, 2018, No. 17-CV-855 (JPO))........................13

*Hancock v. Essential Resources, Inc.*,
  792 F. Supp. 924 (E.D.N.Y. 1992) ....................................................................5

*Ivy Mar Co. v. C.R. Seasons*,
  907 F.Supp 547 (EDNY 1995) ........................................................................5, 6

*Jayaraj v. Scappini*,
  66 F.3d 36 (2d Cir. 1995) ..............................................................................6

*Loveridge v. Pendleton Woolen Mills, Inc.*,
  788 F.2d 914 (2d Cir. 1986)............................................................................6

*Mertens v. Hewitt Assocs.*,
  508 U.S. 248, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993) ........................................14

*Moreau v. Ellsworth*,
  2020 US Dist LEXIS 74224 (NDNY Apr. 28, 2020, No. 9:20-CV-0124
  (DNH/ATB)) ............................................................................................................5

*Morgulas v. Yudell Realty*,
  161 A.D.2d 211 (1st Dep't 1990) ...........................................................................11

*New York State Teamsters Council Health & Hosp. Fund v. Centrus Pharmacy
  Solutions*,
  235 F. Supp. 2d 123 (N.D.N.Y. 2002) ...................................................................15

*Palazzo v. Palazzo*,
  121 A.D.2d 261 (1st Dep't 1986) ...........................................................................11

*People for Ethical Treatment of Animals v. Giuliani*,
  105 F. Supp. 2d 294 (S.D.N.Y. 2000) ......................................................................4

*Purdie v. Supervisor*,
  2010 US Dist LEXIS 2715 (NDNY Jan. 13, 2010, No. 9:09-CV-951
  (FJS/ATB)) ............................................................................................................5, 6

*Quezada v BP Prods. N. Am., Inc.*,
  2006 US Dist LEXIS 94630 (EDNY Dec. 1, 2006, No. 06 CV 5378 (SJ)) ..............9

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
  No. 17 Civ. 239, 718 Fed. Appx. 3, 2017 U.S. App. LEXIS 19821, 2017 WL
  4534782 (2d Cir. Oct. 11, 2017) ......................................................................13, 14

*Sampson v. Murray*,
  415 U.S. 61 (1974) ................................................................................................6, 7

*Tom Doherty Assocs. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995) .........................................................................................5

*Triebwasser & Katz v. American Telephone & Telegraph Co.*,
  535 F.2d 1356 (2d Cir. 1976) ...................................................................................6

*Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Arista Plumbing
  Heating & Piping Corp.*,
  2013 US Dist LEXIS 185821 (EDNY Feb. 10, 2013, No. 12-CV-5130 (SLT)
  (VMS)) ......................................................................................................................7

*Winter v. Nat. Res. Def Council, Inc.*,
  555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ..............................................4

**Statutes**

29 U.S.C. 1102(a)(2)..............................................................................................................10

29 U.S.C. § 1002(21)(A)...................................................................................................10, 13

29 U.S.C. § 1109 (ERISA § 409)........................................................................................2, 10

29 U.S.C. § 1132(a)(3)........................................................................................................10

29 U.S.C. § 1132 (ERISA § 502(a)(3)) ..............................................................................2, 10

29 U.S.C. § 1145..................................................................................................................7

Employee Retirement Income Security Act of 1974 (ERISA)...................................................12

ERISA ..................................................................................2, 8, 10, 12, 13, 14, 15

ERISA Section 302(g)(2)(E)..............................................................................................7, 8

ERISA Section 515 ...............................................................................................................7

**Other Authorities**

29 C.F.R. .............................................................................................................................15

29 C.F.R. § 2509.75-8....................................................................................................14, 15

This memorandum of law is filed on behalf of Omni Administrators Inc. d/b/a Leading Edge Administrators ("**LEA**") in opposition to The Providence Groups, LLC's ("**Providence**") Motion for a Preliminary Injunction, dated October 21, 2020.

<u>**PRELIMINARY STATEMENT**</u>

Through this motion, Providence takes the unprecedented step of essentially requesting that this Court summarily decide four out of six of the counts asserted in the Complaint filed in this matter – a Complaint that was filed *the same day as the request for the preliminary injunction* and before LEA has even answered, much less taken even one iota of discovery. As set forth in the detailed declaration of Avrahum Friedman, dated November 6, 2010 ("**Friedman Dec**"), LEA intends to deny all of the spurious claims made against it when LEA files its Answer. However, Providence has asked this Court to order the drastic remedy of a mandatory preliminary injunction based upon one affidavit and a few exhibits attached to that affidavit. For the reasons set forth below, Providence has failed to meet the high burden of establishing that it is entitled to a *mandatory* preliminary injunction

First, Providence has not established that it will suffer irreparable harm if its request for a preliminary injunction is not granted. Notably, Providence has asserted in its Complaint that it is seeking $1.5 million in monetary damages against LEA. The conduct at issue for which money damages are sought is the exact same conduct upon which Providence relies in its request for the subject injunction. It is well-settled that where monetary damages would adequately compensate a party, a preliminary injunction is inappropriate and should not be granted. Furthermore, although Providence has the temerity to claim that it is at risk of irreparable harm due to the potential loss of good will and confidence flowing from its employees, as set forth in the Freidman Dec, that loss of confidence and goodwill is the fault of Providence who, despite repeated updates and

information about what monies were owed for unpaid claims provided to it by LEA over the course of months, simply failed to pay those claims. Providence comes to this court after having entirely mismanaged its own self-funded health care program, and after ignoring all the warnings and advice of LEA, nevertheless, it now wants the Court to order LEA to heal Providence's self-inflicted wounds. Providence should be held accountable for its failure to properly manage the funds of its own plan and its transparent attempts to shift the blame to LEA should be rejected by this Court.

Second, Providence has utterly failed to make a clear showing of a likelihood of success on the merits. Simply because a party proclaims it has established a likelihood of success on the merits does not make it so. As set forth in the Friedman Dec, the reports and documents to which Providence claims entitlement were provided previously and, now, have been provided yet again in the form of a new report sent since the filing of this action. As evidenced by the Friedman Dec, the contents of the Administrative Services Agreement ("**ASA**"), and the legal authority described more fully below, LEA was not a fiduciary for the Providence health care plan under ERISA despite Providence's *ipse dixit* claims to the contrary. This fact is a death knell to Count One (Breach of Fiduciary Duty, 29 U.S.C. § 1109 (ERISA § 409)). Moreover, while Providence has plead claims for an equitable accounting in Count Two (29 U.S.C. § 1132 (ERISA § 502(a)(3)), there too, because LEA was not a fiduciary, Providence will not be entitled to such accounting. With respect to Count Three (negligence), Count Four (breach of contract) and Count Five (indemnification), all of those claims stem from the nature of the relationship between LEA and Providence and LEA's performance under the ASA. *All of those allegations are hotly contested by LEA as set forth in the Friedman Dec.* While LEA contends that Providence will never prevail on these claims, certainly, in light of the information before the Court at this stage, whether LEA

is correct or Providence is correct, it is entirely too early to tell. Finally, with respect to Count Six (specific performance), that relief is only available when a monetary remedy will not suffice. Because Providence has available to it the option of a monetary award, that count is not likely to prevail.

Accordingly, Providence cannot establish a likelihood of success of these disputed matters, as it must, in order to obtain a mandatory preliminary injunction.

## STATEMENT OF FACTS

The facts relevant to LEA's claims in opposition to this motion can be found in the Friedman Dec being filed herewith and are incorporated herein by reference.

## ARGUMENT

## I.    THE REQUESTED PRELIMINARY INJUNCTION IS NOW MOOT

The instant motion seeks an Order directing LEA to produce information it has already provided to Providence in the past when it was serving as Providence's third-party administrator ("**TPA**"). Nevertheless, as set forth in the Friedman Dec, in a good-faith effort to resolve Providence's motion for injunctive relief, and while not required to do so pursuant to the ASA or any Order of this Court, LEA spent over fifty hours in the last ten days reviewing (again) the health care service claims made to the Providence Plan on behalf of its participants. LEA has provided another detailed analysis of the same by way of a lengthy excel spreadsheet comprised of forty-three columns and three thousand, three hundred, forty-eight lines ("**Friedman Spreadsheet**"). Once again, all of the information contained in the Friedman Spreadsheet was provided to Providence previously on a rolling basis in reports and reconciliations during the course of LEA's work as the TPA. Providence simply never funded the claims so that LEA could pay them on its behalf. For the sake of expediency and to more readily resolve the instant motion, *while not*

*required to do so,* LEA has now provided the data on the unpaid claims again.  Providence now has to *pay them.*  This fact alone renders the application for the OSC moot.

## II.    PROVIDENCE IS NOT ENTITLED TO INJUNCTIVE RELIEF AGAINST LEA

### A.    Legal Standard

In the event that Providence objects to the detailed spreadsheet now provided and asks for even more information, that request should be denied because it has not met the high burden of proving entitlement to a preliminary injunction.

In order to obtain a preliminary injunction, the moving party must establish the following: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) the public interest is served by an injunction. *See Ashcroft v. NY State Dept. of Corr. & Community Supervision*, 2020 US Dist LEXIS 6387, at *2-4 (WDNY Jan. 13, 2020, No. 1:18-CV-00603 EAW); *Winter v. Nat. Res. Def Council, Inc*., 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

"Normally, the purpose of a preliminary injunction is to maintain the status quo ante pending a full hearing on the merits.  Occasionally, however, the grant of injunctive relief will change the positions of the parties as it existed prior to the grant." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985) (citations omitted), overruled on other grounds, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987). "A higher standard applies… if the requested injunction is 'mandatory,' altering rather than maintaining the status quo, or if the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if defendant prevails at a trial on the merits." *People for Ethical Treatment of Animals v. Giuliani*, 105 F. Supp. 2d 294, 303 (S.D.N.Y. 2000), *report and recommendation adopted*, No. 00 CIV. 3972 (VM), 2000 U.S. Dist. LEXIS 15819, 2000 WL 1639423 (S.D.N.Y. Oct. 31, 2000), aff'd, 18 F. App'x 35 (2d Cir. 2001).

The Second Circuit has clearly noted "that a mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Assocs. v. Saban Entm't, Inc*., 60 F.3d 27, 34 (2d Cir. 1995) (quotations and citation omitted).

**B.     Providence's Application For Injunctive Relief Must Be Denied Because It Is Based Upon Nothing More Than Allegations and Is Premature.**

In New York, bare allegations, without more, are not enough to warrant the issuance of a preliminary injunction. *Anderson v. Mex. Acad. & Cent. Sch.,* 186 F.Supp. 2d 193, 209 (N.D.N.Y. 2002) (mandatory preliminary injunction denied where plaintiffs did not produce evidence "establishing a clear or substantial likelihood of success on the merits"); *Moreau v. Ellsworth,* 2020 US Dist LEXIS 74224, at *5-6 (NDNY Apr. 28, 2020, No. 9:20-CV-0124 (DNH/ATB)) (Plaintiff's failure to substantiate his allegations of irreparable harm with evidence in admissible form or to demonstrate a likelihood of success on the merits of his underlying claims warrants denial of his motion.); *Hancock v. Essential Resources, Inc*., 792 F. Supp. 924, 928 (E.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals" concerning a former employee's misconduct); *Purdie v. Supervisor*, 2010 US Dist LEXIS 2715, at *11 (NDNY Jan. 13, 2010, No. 9:09-CV-951 (FJS/ATB)) (Plaintiff's submission of only his affidavit containing his request for injunctive relief and the reasons why he believes the Court should grant his request, standing alone, were not sufficient to entitle him to preliminary injunctive relief.)

Notably, in *Ivy Mar Co. v. C.R. Seasons*, 907 F.Supp 547, 553 (EDNY 1995), a case that was referred by this Court referred to Judge Robert Levy, plaintiffs sought to enjoin an employee from working for or on behalf of defendants or from soliciting the current or former customers of the plaintiff companies.  In analyzing whether there was a likelihood of success on the merits, the Court analyzed plaintiff's claim that defendant breached its fiduciary duty to plaintiff.  The Court

held that, while discovery *might* reveal concrete evidence that defendants stole or removed materials from plaintiffs' offices, "[p]laintiffs' bare allegations, without more, are insufficient for the issuance of a preliminary injunction. *Id*. at 561. Here too, the same analysis applies. The Cox Affidavit and the exhibits attached that *allege* improper conduct by LEA. No Answer has been filed (much less discovery taken). Those documents are far short of meeting the high burden to justify the issuance of *a mandatory injunction*.

At least one New York Court has held that where a defendant has not yet answered a complaint, or where a defendant has not appeared in a lawsuit, the Court cannot ascertain a plaintiff's likelihood of success on his claims and, therefore, the injunctive relief sought by that plaintiff must be denied. *Purdie v. Supervisor*, 2010 US Dist LEXIS 2715, at *12 (NDNY Jan. 13, 2010, No. 9:09-CV-951 (FJS/ATB)). Simply stated, without knowing the defenses, counterclaims and/or affirmative defenses of LEA, as specified in its Answer, this Court is entirely unable to determine Providence's likelihood of success on the merits of its claims.

### C.    Providence Has Failed to Establish That It Will Be Irreparably Harmed.

Providence's claim that it will sustain irreparable harm if its requested injunctive relief is not granted is undercut by Providence's monetary damages claim seeking approximately $1.5 million. The Second Circuit has routinely held that where money damages are adequate compensation, a preliminary injunction will not issue. Equity will not intervene where there is an adequate remedy at law. *See Jayaraj v. Scappini,* 66 F.3d 36, 39 (2d Cir. 1995); *Loveridge v. Pendleton Woolen Mills, Inc*., 788 F.2d 914, 918 (2d Cir. 1986); *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1359 (2d Cir. 1976).

Notably, in *Sampson v. Murray*, 415 U.S. 61, 90 (1974), the Supreme Court itself stressed that the key word in the consideration of whether there is irreparable harm is "irreparable":

Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. *The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm*. (emphasis added)

It is undisputed that Providence has demanded a money judgement against LEA, "as a result of LEA's failure to timely process claims and to submit claims to the stop loss insurer..." (Complaint at p. 17). Providence's motion confirms that the alleged conduct of LEA to which Providence claims entitlement to a preliminary injunction is identical to the conduct that Providence claims entitles it to approximately $1.5 million, specifically, LEA's processing and reporting of claims under the Plan. Thus, the allegations in Providence's complaint unambiguously establish that adequate compensatory or other corrective relief may be available to Providence at a later date, in the ordinary course of litigation, which, weighs heavily against Providence's claim of irreparable harm. *See Sampson,* 415 U.S. at 90.

Providence's reliance on *Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Arista Plumbing Heating & Piping Corp*., 2013 US Dist LEXIS 185821 (EDNY Feb. 10, 2013, No. 12-CV-5130 (SLT) (VMS)) ("*Trustees*") is entirely misplaced. In *Trustees,* a default judgment was rendered against the defendant and the Court awarded the plaintiff a liability judgment relating to the plaintiff's effort to enforce Section 515 of ERISA through an audit of defendant's books and records. Solely based on the default of defendant, the Court held that the plaintiff was entitled to "legal and equitable relief as the court deems appropriate" under Section 302(g)(2)(E), which provides that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce [Section 515 of ERISA, or 29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan . . . legal or equitable relief as the court deems appropriate." *Id*. at 17.

In the instant matter, LEA has not defaulted nor has the liability of LEA been litigated. LEA *has not even answered.* Section 302(g)(2)(E) of ERISA and *Trustees,* therefore, is entirely irrelevant because no judgement has been rendered in favor of Providence that would allow the Court to award Providence with "legal or equitable relief" under ERISA.[1]

Providence argues that it is at risk of irreparable harm because the information it seeks is needed to pay the claims – claims it failed to pay for almost a year. As set forth in the Friedman Dec, all of this information was previously provided by way of regular reports that LEA submitted along the way when it was serving as the TPA. (Friedman Dec. at ¶¶ 20,30, 33, 39, 45). If Providence has lost (or is at the risk of losing) the goodwill of its employees, it is its own fault. It failed to pay attention to the claims that were submitted to it by its former TPA, LEA. Now, after ignoring the information and not addressing the situation, they cannot determine what monies they owe and to whom. These are claims that accumulated over the course of a year and for which they were regularly notified by LEA. (Friedman Dec. at ¶ 33). No doubt their employees are now getting collections letters and calling Providence management to complain about the situation. But this is a problem of Providence's own making that they now ask the Court to order LEA to solve. In effect, Providence has asked this Court to order LEA to re-engage, work for free, educate Providence (once again) on all these claims (that it failed to previously pay) and help Providence sort out a mess *that it brought on itself.* The risk of "irreparable harm" was caused by Providence and not LEA. A party cannot come to this tribunal with unclean hands and ask it to order a third party to solve problems of its own making.

---

[1] For the reasons set forth below, ERISA is not applicable to any claims against LEA because it is not a fiduciary in the first instance.

8

Moreover, Providence's reliance on *Gulf Oil Ltd. P'ship v. Semerci*, 2013 US Dist LEXIS 13510 (EDNY Jan. 30, 2013, No. CV-12-4731 (SJF)(WDW)), is also misplaced.  Although in *Gulf Oil Ltd. P'ship*, the court stated that the loss of goodwill *can* constitute irreparable harm, in that matter the preliminary injunction sought was prohibitory in nature, as the plaintiff was seeking to have the defendant removed from plaintiff's property to maintain the status quo.  The instant case does not involve a prohibitory preliminary injunction.  Providence concedes this fact.  (Plaintiff's Memorandum of Law at p 7).  Providence seeks a mandatory injunction, which, "alters the status quo by commanding some positive act… [and] requires the movant to meet a higher standard and will issue only 'upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Quezada v BP Prods. N. Am., Inc.*, 2006 US Dist LEXIS 94630, at *6 (EDNY Dec. 1, 2006, No. 06 CV 5378 (SJ)).  *Gulf Oil Ltd. P'ship* is irrelevant.  Providence has to meet a *very high burden* here, there has been no *clear showing* that it is entitled to a mandatory preliminary injunction, which is higher than what was required in *Gulf Oil Ltd. P'ship*.

Finally, and perhaps most importantly, Providence is now in possession of the Friedman Spreadsheet prepared by LEA that sets forth all of the information relevant to the unpaid claims. While Providence had what it needed before (because it was provided regularly in the form of reports sent by LEA), now it has a detailed accounting of all of the outstanding claims. Providence just needs to pay them.  Thus, there is no risk of irreparable harm.

    **D.**    **Providence Has Failed To Make A Clear Showing That It Is Substantially Likely To Succeed On The Merits.**

Providence has failed to show a likelihood of success on the merits.  It is not enough for a movant to prove a *chance* of success on the merits, or that it has plead legally cognizable *potential* claims.  Under well-established Second Circuit law, to obtain a preliminary injunction,

a movant must show a likelihood (*i.e.* more likely than not) that it will succeed on the merits. *See Ashcroft, supra.* A careful review of the Friedman Dec reveals that Providence has little chance of success on the merits, much less a likely one.

      1.  <u>Providence Is Not Likely to Succeed on Its Fiduciary Duty Claims</u>

The first cause of action asserted by Providence is premised upon the application of ERISA. In Count One, Providence has sued LEA under 29 U.S.C. § 1109 which states:

> (a) Any person *who is a fiduciary* with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

However, claims for breach of fiduciary duty may only be brought against persons who were named as fiduciaries because they exercised discretionary control over the operation or administration of an ERISA plan. 29 U.S.C. 1102(a)(2); 29 U.S.C. § 1002(21)(A). In other words, if LEA is not a fiduciary, Providence has no chance at success on the merits of Count One.

In Count Two, Providence lumps in a general claim for an equitable accounting under 29 U.S.C. § 1132, ERISA § 502(a)(3) and the SAS. 29 U.S.C. § 1132(a)(3) states that a civil action may be brought

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (b) to obtain appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

This statute, therefore, permits a fiduciary to pursue claims for an equitable accounting. Providence concedes that it was a fiduciary for the Providence Plan (*see,* Complaint ¶ 71).

However, what Providence fails to note is that, under New York law, the party against whom the accounting is sough must be a fiduciary in order for an accounting to be ordered.  In New York, the right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship with respect to property in which the party seeking the accounting has an interest.  *See Adam v. Cutner & Rathkopf,* 238 A.D.2d 234, 242 (1st Dep't 1997); *Palazzo v. Palazzo*, 121 A.D.2d 261, 265 (1st Dep't 1986); *Morgulas v. Yudell Realty*, 161 A.D.2d 211, 213-214 (1st Dep't 1990).  If the party against whom an equitable accounting is sought is not a fiduciary, that claim fails.  Once again, if LEA is not a fiduciary (and it is not, as explained below), Providence has no chance of success on Count Two.

(a)    <u>The ASA Indicates that LEA is Not A Fiduciary</u>

The ASA between Providence and LEA *clearly* reflects the parties' intent *not* to hold LEA out as a fiduciary under the plan.  This is not only reflected by the fact that the only party affirmatively labeled as a "fiduciary" in the agreement was Providence (*see* Friedman Dec. Ex B at p. 2), but also by the fact that the agreement is riddled with language clearly specifying that Providence was the only party with any authority over plan policy, interpretations, practices or procedures.  In fact, Providence has completely omitted any reference to Schedule "B" of the ASA, entitled "List of Administrative Services."  This section of the ASA not only explicitly states that the services to be rendered by LEA are "administrative" in nature, but actually identifies the specific administrative tasks and services for which it was responsible, all of which fall directly in line with the "purely ministerial functions" under the Department of Labor's ("**DOL**") interpretative guidelines. (See discussion of the DOL interpretative guidelines below).  (Friedman Dec Ex B, Schedule B).

Furthermore, section 6.2 of the ASA explicitly and unambiguously refers to the fact that LEA's job responsibilities under the plan were purely administrative functions: "*Claims Administrator provides administrative Claims payment services only…*" (Freidman Dec Ex B at § 6.2 (ASA)(emphasis added)).

Further evidence of Providence's complete control and unfettered authority over every aspect of the plan is laid out in various other section contained within the ASA:

- …the parties intend that the Plan Sponsor shall be deemed a "fiduciary" for the Plan within the scope of this agreement and within the meaning of ERISA and Plan Sponsor shall *have discretionary authority and final determinative capability where the Plan Sponsor has so delegated such responsibilities*." [2] *Id*. at page 2. (emphasis added)

- Plan Sponsor will be responsible for complying with all applicable provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as amended. This includes the fiduciary responsibilities of establishing and structuring the Plan, maintaining adequate funding to support the Plan and *making all final Claims decisions.* Claims Administrator will be responsible for developing, maintaining, printing, and providing to Plan Sponsor and its covered employees copies of the Plan Document describing the Plan, and copies of a summary brochure of benefits, limitations, exclusions, and waiting periods. Claims Administrator will also be responsible for administering Claims as set forth in 4.2, below.[3]

- Claims Administrator shall rely on the information provided by Plan Sponsor… *Claims Administrator is not responsible for the accuracy of any information provided by Plan Sponsor.*" (emphasis added)[4]

It is critical to note that the only grounds for which Providence asserts that LEA is a fiduciary under the plan is based on the language contained in section 4.2 of the ASA, which provides, in pertinent part, that Providence delegated to LEA, "… authority to make initial Claims

---

[2] Friedman Dec Ex B (ASA at p. 2)
[3] Friedman Dec Ex B (ASA at Section 4.1)
[4] Friedman Dec Ex B (ASA Section 5.3)

determinations on Plan Sponsor's behalf with respect to Claims for benefits under the Plan." *Id.* at § 4.2. However, any purported authority given to LEA to make initial claims determinations would be trumped by section 4.2 of the ASA, which states that Providence had the sole authority to make final Claims decisions under the plan. (*Compare* Freidman Dec Ex B at §§ 4.1, 4.2 (ASA)(emphasis added)).

    (b)    <u>Federal Law Indicates LEA Was Not a Fiduciary</u>

Providence may argue that simply because the ASA does not identify LEA as a fiduciary does not end the analysis. As a result, the Freidman Dec has explained in great detail exactly what LEA actually did for Providence to educate the Court on this issue. "The 'threshold question' in every case alleging breach of fiduciary duty is whether the service provider 'was acting as a fiduciary . . . when taking the action subject to [the] complaint.'" *Haley v. Teachers Ins. & Annuity Assn. of Am.*, 2018 US Dist LEXIS 52138, at \*10-13 (SDNY Mar. 26, 2018, No. 17-CV-855 (JPO)); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 17 Civ. 239, 718 Fed. Appx. 3, 2017 U.S. App. LEXIS 19821, 2017 WL 4534782, at \*2 (2d Cir. Oct. 11, 2017) (alterations in original) (*quoting Pegram v. Herdrich*, 530 U.S. 211, 226, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000)). Under the relevant ERISA provisions, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). "Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted; [s]ubsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised." *Rosen*, 2017 U.S. App. LEXIS

19821, 2017 WL 4534782, at *2 (alteration in original) (quoting *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 63 (2d Cir. 2006)).

"ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan . . ." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993). Therefore, in determining fiduciary status, courts consider "the actual discretionary authority held by the purported fiduciary rather than its particular label or title." *Rosen*, 2017 U.S. App. LEXIS 19821, 2017 WL 4534782, at *2.

In *Fishbein v. Miranda*, 785 F.Supp 2d 375, 386 (SDNY 2011), plaintiffs' alleged in part that defendant Crossroads, a TPA, was a fiduciary under ERISA and that as such Crossroads breached its fiduciary duty by, among other things, diverting monies properly allocated to plaintiff (UMMF) and helping set up a Local 210 Retiree Fund. In addressing the threshold question of whether Crossroads was in fact a fiduciary under the subject fund, the Southern District Court stated that, in determining whether a party is a fiduciary under ERISA, courts have considered the DOL interpretative guidelines. See 29 C.F.R. § 2509.75-8; *see also Geller v. County Line Auto Sales*, Inc., 86 F.3d 18, 21 (2d Cir. 1996).

Those DOL guidelines provide that "persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures" and, thus, perform "purely ministerial functions" are not fiduciaries. 29 C.F.R. § 2509.75-8. Examples of "purely administrative functions" include:

> (1) Application of rules determining eligibility for participation or benefits;
>
> (2) Calculation of services and compensation credits for benefits;
>
> (3) Preparation of employee communications material;
>
> (4) Maintenance of participants' service and employment records;

(5) Preparation of reports required by government agencies;

(6) Calculation of benefits;

(7) Orientation of new participants and advising participants of their rights and options under the plan;

(8) Collection of contributions and application of contributions as provided in the plan;

(9) Preparation of reports concerning participants' benefits;

(10) Processing of claims; and

(11) Making recommendations to others for decision with respect to plan administration.  Id.

Significantly, in finding that Crossroads' could not be found to be a fiduciary in *Fishbein*, the Court stated that most of Crossroads' contractual duties were similar to or encompassed by one or more of the "ministerial" examples provided in the DOL interpretive guidelines. *Fishbein supra.* at 386.  *See also*, *New York State Teamsters Council Health & Hosp. Fund v. Centrus Pharmacy Solutions*, 235 F. Supp. 2d 123, 124-28 (N.D.N.Y. 2002) (finding, on motion to dismiss, that plan manager was not an ERISA fiduciary because the tasks it performed under its service agreement were "virtually identical to those set forth in 29 C.F.R. [§] 2509.75-8") (citation omitted).

Similarly here, LEA was simply doing "ministerial" functions as defined in the DOL guidelines such as: (i) applying rules of the SPD to determine eligibility of participant's for certain benefits; (ii) calculating services and compensation credits for benefits; (iii) collecting contributions and application of contributions as provided in the plan; and (iv) processing claims. It is clear that LEA was not provided with any power to make any decisions as to plan policy, interpretations, practices or procedures and, was assigned to perform purely ministerial actions.

*See* 29 C.F.R. § 2509.75-8.  Therefore, LEA cannot be considered a fiduciary under federal law any fiduciary claim against it will fail.

### 2.  Providence is Not Likely to Succeed in its Breach of Contract Claim

The papers submitted in support of the motion do not indicate a likelihood of success on the merits of the breach of contract claim.  The crux of Providence's argument hinges on its interpretation of the agreement, an interpretation with which LEA strongly disagrees, and is clearly an issue of fact that will need to be resolved by the Court.  For example, LEA disputes that it failed to provide claims information and relevant documentation to Providence on a routine basis. (*E.g., Friedman Decl.  ¶ 44*).  As set forth in the Friedman Dec, once LEA made any administrative determinations, LEA would send an electronic report to Providence informing Providence what it owed for each claim and requesting Providence to provide a specific sum to LEA so that LEA could, in turn, make the payment.   (*Id*. at ¶¶ 20, 33).  Furthermore, LEA informed Providence repeatedly that it had fallen behind in its obligations to make payments for claims.  (*Id*. at ¶¶  30, 34).  LEA informed Providence of a shortfall of approximately $315,000 in May 2019. (*Id*. at ¶ 34).  There were numerous emails and teleconferences explaining the issues and problems and what money was owed and why. (*Id*.).  Providence was consistently confused as to where and how the funds were applied and why there was a shortfall. (*Id*. at ¶ 35).  Representatives of LEA had multiple reconciliation exercises with LEA's staff. (*Id*.).  Thus, it can hardly be stated that Providence has showed a likelihood of success on the merits for the breach of contract claim.

### 3.  Providence Has Not Shown a Likelihood of Success on the Negligence Claim

It goes without saying that for a negligence claim, the facts alleged by Providence do not exhibit a likelihood of success on the merits, especially in light of the denials set forth in the Friedman Dec and the absence of any discovery at all.

4.    <u>Providence Has Not Shown A Likelihood of Success on the Merits for the Specific Performance Claim</u>

Finally, for the specific performance count, Providence has not established a likelihood of success.  "To obtain the equitable remedy of specific performance of the contracts breached, plaintiff also must show that damages are an inadequate remedy.  *Cohen v. CASSM Realty Corp.,* 54 Misc. 3d 256, 280, (N.Y. Sup. Ct. 2016) citing *Sokoloff v. Harriman Estates Dev. Corp.,* 96 N.Y.2d 409, 415, (2001); *Cho v. 401–403 57th St. Realty Corp.,* 300 A.D.2d 174, 175 (1st Dep't 2002).  As set forth above, Providence has an adequate remedy at law and, therefore, the specific performance claim (Count Six) will fail.

**E.    Providence Has Failed To Establish That Extreme Or Very Serious Damage Will Result In The Absence Of An Injunction.**

As discussed above, LEA asserts that the alleged damages sustained by Providence and its employees is due to the conduct of Providence for failing to adequately fund the Providence's plan.  Providence is now in possession of a spreadsheet prepared by LEA that sets forth all of the information relevant to the unpaid claims.  Accordingly, the subject application should be deemed moot and any claim by Providence that it will suffer extreme or very serious damage in the absence of an injunction should be rejected by the Court.

<u>**CONCLUSION**</u>

For all the foregoing reasons, Providence's Motion For a Preliminary Injunction, dated October 21, 2020, should be denied by the Court in all respects.

Dated:  Nassau, New York
        November 6, 2020

RIVKIN RADLER LLP

By: _Kenneth C. Murphy_

     Kenneth C. Murphy
     Barry I. Levy
     Brian Feld
     477 Madison Avenue
     New York, New York 10022
     Telephone:     (516) 357-3000
     Facsimile:     (516) 357-3333
     Casey.Murphy@rivkin.com