UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THE PROVIDENCE GROUP LLC,

                          Plaintiff,                  **Case No.: 1:20-cv-05067**

-against-

OMNI ADMINSTRATORS INC. d/b/a/ LEADING
EDGE ADMINISTRATORS,

                          Defendants.
-------------------------------------------------------------------X


**LEADING EDGE ADMINISTRATOR INC.'S MEMORANDUM OF LAW IN SUPPORT
OF ITS PRE-ANSWER MOTION
TO
DISMISS COUNT I AND COUNT II OF PLAINTIFF'S COMPLAINT**


                                                              RIVKIN RADLER LLP

                                                              Barry I. Levy
                                                              Kenneth C. Murphy
                                                               Brian L. Feld
                                                               926 RXR Plaza, 10th Floor
                                                               Uniondale, NY 11556-0926
                                                               (516) 357-3000
                                                               Casey.Murphy@Rivkin.com


Dated:  February 2, 2021

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................. 4

     I.     STANDARD OF REVIEW ................................................................................ 4

     II.    COUNT I OF THE COMPLAINT MUST BE DISMISSED
          BECAUSE LEA IS NOT, AND WAS NEVER INTENDED
          TO BE, A FUDICIARY UNDER THE PLAN. ................................................... 5

     III.   COUNT II OF THE COMPLAINT MUST BE DISMISSED............................ 12

          A.    LEA Was Not a Fiduciary and Therefore Providence
               Has No Right to an Equitable Accounting.................................................. 12

          B.    The ASA Does Not Require an Accounting Because
               Providence Failed to Timely Request the Same. ....................................... 13

CONCLUSION........................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adam v. Cutner & Rathkopf*,
   238 A.D.2d 234 (1st Dep't 1997) ...............................................................................12

*Albert v. Carovano*,
   851 F.2d 561 (2d Cir. 1988)........................................................................................4

*Blatt v. Marshall & Lassman*,
   812 F.2d 810 (2d Cir. 1987).......................................................................................10

*Clapp v. Greene*,
   743 F. Supp. 273 (S.D.N.Y. 1990), aff'd, 930 F.2d 912 (2d Cir.), cert. denied,
   502 U.S. 868, 116 L. Ed. 2d 157, 112 S. Ct. 197 (1991) ............................................4

*CSA 401(k) Plan v. Pension Prof'ls, Inc.*,
   195 F.3d 1135 (9th Cir. 1999) ...................................................................................10

*Fishbein v. Miranda*,
   785 F.Supp 2d 375 (SDNY 2011) ...........................................................................8, 9

*Geller v. County Line Auto Sales*,
   86 F.3d 18 (2d Cir. 1996).......................................................................................8, 10

*Haley v. Teachers Ins. & Annuity Assn. of Am.*,
   2018 US Dist LEXIS 52138 (SDNY Mar. 26, 2018, No. 17-CV-855 (JPO)).............7

*Harris Trust and Sav. Bank v. Provident Life and Acc. Ins. Co.*,
   57 F.3d 608 (7th Cir. 1995) .......................................................................................10

*Kaluczky v. City of White Plains*,
   57 F.3d 202 (2d Cir. 1995)..........................................................................................4

*Krimslock v. Kelly*,
   306 F.3d 40 (2d Cir. 2002)..........................................................................................2

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)..........................................8

*Morgulas v. Yudell Realty*,
   161 A.D.2d 211 (1st Dep't 1990) ..............................................................................13

*New York State Teamsters Council Health & Hosp. Fund v. Centrus Pharmacy
   Solutions*,
   235 F. Supp. 2d 123 (N.D.N.Y. 2002).....................................................................9, 10

*Palazzo v. Palazzo*,
   121 A.D.2d 261 (1st Dep't 1986) ...............................................................................12

*Pohl v. National Benefits Consultants, Inc.*,
   956 F.2d 126 (7th Cir. 1992) ......................................................................................10

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
   No. 17 Civ. 239, 718 Fed. Appx. 3, 2017 U.S. App. LEXIS 19821, 2017 WL
   4534782 (2d Cir. Oct. 11, 2017) ..............................................................................7, 8

*Sheppard v. Beerman*,
   18 F.3d 147 (2d Cir.) ....................................................................................................4

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002) .................................................4

**Statutes**

29 U.S.C. 1102(a)(2) ...........................................................................................................5

29 U.S.C. § 1002(21)(A) .................................................................................................5, 7

29 U.S.C. § 1106(a) ............................................................................................................9

29 U.S.C. § 1109 (ERISA § 409) ...............................................................................1, 2, 5

29 U.S.C. § 1132 ................................................................................................................1

29 U.S.C. § 1132(a)(3) .....................................................................................................12

29 U.S.C. § 1132, ERISA § 502(a)(3) ........................................................................1, 12

29 U.S.C. § 1132 (ERISA § 502(a)(3)) .............................................................................2

Employee Retirement Income Security Act of 1974 .......................................................1

Employee Retirement Income Security Act of 1974 (ERISA) ......................................6

ERISA .............................................................................3, 5, 6, 7, 8, 9, 10, 11, 12, 13

ERISA § 502(a)(3) .............................................................................................................1

<u>ERISA § 1132</u> ............................................................................................................12, 13

**Other Authorities**

29 C.F.R. 2509.75-8 ....................................................................................................10, 11

29 C.F.R. § 2509.75-8 ..................................................................................................8, 12

Fed. R. Civ. P. 12 ......................................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1, 4, 9

Order (a) ...................................................................................................................................... 1

This memorandum of law is filed on behalf of Omni Administrators Inc. d/b/a Leading Edge Administrators ("**LEA**") in support of its motion seeking an Order (a) pursuant to Fed. R. Civ. P. 12(b)(6) dismissing Count I (Breach of Fiduciary Duties Under 29 U.S.C. § 1109 (ERISA § 409)), and dismissing Count II (Claim for Equitable Accounting Arising Under 29 U.S.C. § 1132; ERISA § 502(a)(3) and the Administrative Services Agreement) of Plaintiff's Complaint ("**Complaint**"); and (b) granting LEA such other and further relief as this Court deems just and proper. [1]

## PRELIMINARY STATEMENT

In its Complaint, Plaintiff asserts two causes of action against LEA predicated upon the Employee Retirement Income Security Act of 1974 ("**ERISA**"). Specifically, Count I of the Complaint alleges that LEA breached its fiduciary duty under 29 U.S.C § 1109 (ERISA § 409) and Count II alleges that Providence is entitled to an equitable accounting arising under 29 U.S.C. § 1132, ERISA § 502(a)(3), as well as the Administrative Services Agreement ("**ASA**") entered into by and between Providence and LEA.[2] In support of these allegations, however, other than making the blanket, unsubstantiated claim that LEA was a fiduciary, Providence fails to allege facts in its Complaint sufficient to support an inference that LEA was a fiduciary for Providence's employer sponsored health benefits plan ("**Plan**") and/or owed any fiduciary duty to the Plan's members.

In fact, the documents attached to the Complaint and filed therewith, as well as prior legal precedent, establish clearly that LEA was not a fiduciary. Notably, nowhere in the ASA is LEA specifically identified as a fiduciary nor are the job responsibilities of LEA (as the third-party

---

[1] A true and correct copy of the Complaint is attached as *Exhibit A* to the declaration of Kenneth C. Murphy, dated February 2, 2021 and filed herewith ("**KCM Dec.**").
[2] A true and correct copy of the ASA is attached as Exhibit B to the KCM Dec.

administrator of the plan), as set forth in the ASA, the type that would be performed by a fiduciary. The services rendered by LEA are explicitly and unambiguously identified as "administrative" and are clearly not the type that would be assigned to a fiduciary. (Ex B (ASA, Schedule B)). This fact is a death knell to Count One (Breach of Fiduciary Duty, 29 U.S.C. § 1109 (ERISA § 409)). Moreover, while Providence has plead claims for an equitable accounting in Count Two (29 U.S.C. § 1132 (ERISA § 502(a)(3)), there too, because LEA was not a fiduciary, LEA is not obligated to provide an accounting. Finally, pursuant to the ASA, Providence was only entitled to an accounting in the event that it made such a demand within thirty days of the termination of the ASA. (Ex B, Sec. 9.4). The Complaint indicates no such demand was made until this suit was filed, approximately four months after termination of the ASA.

Accordingly, Providence has failed to plead a legally cognizable claim with respect to Counts I and II of the Complaint, both of which therefore must be dismissed.

## STATEMENT OF FACTS[3]

On or about November 6, 2017, at the request of Providence, LEA issued a proposal to Providence providing for a self-funded health benefits plan with an effective date of December 1, 2017. (Ex A (Complaint) at ¶ 9). LEA's proposal provided that Providence and was to fund the Plan through deductions of certain amounts from each employee's wages, as well as employer contributions directly from Providence. (Id. at ¶¶ 11 - 12). Pursuant to the November 6, 2017 proposal issued by LEA to Providence, effective December 1, 2017, Providence ceased providing health benefits to its employees by way of a third-party health insurance provider and, instead, commenced providing access to health benefits through the Plan. (Id. at ¶¶ 14 - 15).

---

[3] The following statement of facts is based upon the allegations in Plaintiffs' FAC. Defendant does not concede in any respect the truth or accuracy of these allegations, but recognizes that, solely for purposes of this motion, the allegations are entitled to favorable assumptions by law. *See Krimslock v. Kelly,* 306 F.3d 40, 47-48 (2d Cir. 2002).

2

As part of the transition, Providence entered into the ASA with LEA, whereby LEA agreed to serve as the third-party administrator for the Plan, which would run from December 1, 2017 to November 30, 2018. (Id. at ¶ 16). Pursuant to the ASA, Providence was named "Plan Sponsor" and LEA was named as "Claims Administrator." (Ex A (Complaint) at ¶ 17; Ex B (ASA) at p. 2). Significantly, in addition, pursuant to the terms of the ASA, Providence was also named as a plan fiduciary:

> … [Providence] shall be deemed as a '*fiduciary*' for the Plan within the scope of this agreement and within the meaning of ERISA and Plan Sponsor shall have *discretionary authority and final determinative capability* where the Plan Sponsor has so delegated such responsibility." (Ex B at p. 2) (Emphasis added).

LEA was *not* named as a fiduciary to the Plan. (Id.)

The terms of the ASA required LEA to provide "administrative services" to Providence as related to the daily operation of the Plan. (Id. at ¶ 1.1). A detailed listing of administrative services to be provided by LEA was included in Schedule "B" of the ASA. (Ex B, Schedule B). Pursuant to the ASA, Providence was charged with the responsibility for complying with all applicable provisions of ERISA, which included, but was not limited to, fiduciary responsibilities of establishing and structuring the Plan, maintaining adequate funding to support the Plan and *making all final claims decisions*. (Id. at ¶ 4.2) (emphasis added). While certain responsibilities were delegated to LEA pursuant to the terms of the ASA, including making initial Claims determinations on the Plan Sponsor's behalf (*i.e.,* on behalf of Providence), Providence had unfettered control to override any initial Claims determinations recommended by LEA. (Ex B at ¶¶ 4.1 – 4.2).

The plan was fully-funded and all claims were paid for the 2017 Plan Year. (Ex A at ¶ 34). Prior to December 1, 2018, LEA presented a 2018 proposal to Providence to continue and renew

3

the Plan for the year starting December 1, 2018 ("**2018 Plan Year**"), which was subsequently agreed to by Providence. (Ex A at ¶ 36). Providence terminated the Plan and ASA on or about August 31, 2019 and transitioned back to a third-party health benefits provider three months prior to the end of the 2018 Plan Year. (Ex A at ¶ 37). The time period for filing claims under the Plan for the 2018 Plan Year expired on August 31, 2019. (Ex A at ¶ 52).

## ARGUMENT

### I. STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion, a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond a reasonable doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)), cert. denied, 513 U.S. 816 (1994); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir. 1995). Conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. *See, e.g., Clapp v. Greene*, 743 F. Supp. 273, 276 (S.D.N.Y. 1990), aff'd, 930 F.2d 912 (2d Cir.), cert. denied, 502 U.S. 868, 116 L. Ed. 2d 157, 112 S. Ct. 197 (1991); *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988). "A court may dismiss a complaint [under Fed. R. Civ. P. 12] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)).

## II. COUNT I OF THE COMPLAINT MUST BE DISMISSED BECAUSE LEA IS NOT, AND WAS NEVER INTENDED TO BE, A FUDICIARY UNDER THE PLAN.

The first cause of action asserted by Providence is premised upon the application of ERISA. In Count One, Providence has sued LEA under 29 U.S.C. § 1109 which states:

> (a) Any person *who is a fiduciary* with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

However, claims for breach of fiduciary duty may only be brought against persons who were named as fiduciaries because they exercised discretionary control over the operation or administration of an ERISA plan. 29 U.S.C. 1102(a)(2); 29 U.S.C. § 1002(21)(A). In other words, if LEA is not a fiduciary, Providence has no chance at success on the merits of Count One.

(a)  The ASA Indicates that LEA is Not A Fiduciary

The ASA (which is not so coincidentally entitled "*Administrative* Services Agreement") between Providence and LEA *clearly* reflects the parties' intent *not* to hold LEA out as a fiduciary under the plan. This is not only reflected by the fact that the only party affirmatively labeled as a "fiduciary" in the agreement was Providence (*see* Ex B at p. 2), but also by the fact that the agreement is riddled with language clearly specifying that Providence was the only party with any authority over plan policy, interpretations, practices or procedures. In fact, Providence conveniently omitted any reference in its Complaint to Schedule "B" of the ASA, entitled "List of *Administrative* Services." This section of the ASA not only explicitly states that the services to be rendered by LEA are "administrative" in nature, but actually identifies the specific administrative tasks and services for which it was responsible, all of which fall directly in line with the "purely

5

ministerial functions" under the Department of Labor's ("**DOL**") interpretative guidelines. (See discussion of the DOL interpretative guidelines below). (Id., Schedule B).

Furthermore, section 6.2 of the ASA explicitly and unambiguously refers to the fact that LEA's job responsibilities under the plan were purely administrative functions: "*Claims Administrator provides administrative Claims payment services only…*" (Id. at § 6.2 (ASA)(emphasis added)); *This is a contract for those administrative services specifically set forth herein…"* (Id. at ¶ 1.1(a))(emphasis added).

Further evidence of Providence's complete control and unfettered authority over every aspect of the plan is laid out in various other section contained within the ASA:

- …the parties intend that the Plan Sponsor shall be deemed a "fiduciary" for the Plan within the scope of this agreement and within the meaning of ERISA and Plan Sponsor shall *have discretionary authority and final determinative capability where the Plan Sponsor has so delegated such responsibilities*." [4]

- Plan Sponsor will be responsible for complying with all applicable provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as amended. This includes the fiduciary responsibilities of establishing and structuring the Plan, maintaining adequate funding to support the Plan and *making all final Claims decisions*. Claims Administrator will be responsible for developing, maintaining, printing, and providing to Plan Sponsor and its covered employees copies of the Plan Document describing the Plan, and copies of a summary brochure of benefits, limitations, exclusions, and waiting periods. Claims Administrator will also be responsible for administering Claims as set forth in 4.2, below.[5]

- Claims Administrator shall rely on the information provided by Plan Sponsor… *Claims Administrator is not responsible for the accuracy of any information provided by Plan Sponsor*."[6]

---

[4] Ex B (ASA at p. 2)(emphasis added).
[5] Ex B (ASA at Section 4.1).
[6] Ex B (ASA Section 5.3)(emphasis added).

6

It is critical to note that the only grounds for which Providence asserts that LEA is a fiduciary under the plan is based on the language contained in section 4.2 of the ASA, which provides, in pertinent part, that Providence delegated to LEA, "… authority to make initial Claims determinations on Plan Sponsor's behalf with respect to Claims for benefits under the Plan." (*Id*. at § 4.2). However, any purported authority given to LEA to make initial claims determinations would be trumped by section 4.1 of the ASA, which states that Providence had the sole authority to make final Claims decisions under the plan. (*Compare* Id. at §§ 4.1, 4.2)(emphasis added).

  (b)  <u>Federal Law Indicates LEA Was Not a Fiduciary</u>

Not only does the ASA clearly establish that LEA was never intended to be designated as a fiduciary under the plan, but Federal Courts have routinely held that the responsibilities LEA was charged with under the ASA are not those that would support Providences' claim that LEA was a fiduciary under the plan.

"The 'threshold question' in every case alleging breach of fiduciary duty is whether the service provider 'was acting as a fiduciary . . . when taking the action subject to [the] complaint.'" *Haley v. Teachers Ins. & Annuity Assn. of Am.*, 2018 US Dist LEXIS 52138, at *10-13 (SDNY Mar. 26, 2018, No. 17-CV-855 (JPO)); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 17 Civ. 239, 718 Fed. Appx. 3, 2017 U.S. App. LEXIS 19821, 2017 WL 4534782, at *2 (2d Cir. Oct. 11, 2017) (alterations in original) (*quoting Pegram v. Herdrich*, 530 U.S. 211, 226, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000)). Under the relevant ERISA provisions, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). "Subsection one

imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted; [s]ubsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised." *Rosen*, 2017 U.S. App. LEXIS 19821, 2017 WL 4534782, at *2 (alteration in original) (quoting *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 63 (2d Cir. 2006)).

"ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan . . ." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993). Therefore, in determining fiduciary status, courts consider "the actual discretionary authority held by the purported fiduciary rather than its particular label or title." *Rosen*, 2017 U.S. App. LEXIS 19821, 2017 WL 4534782, at *2.

In *Fishbein v. Miranda*, 785 F.Supp 2d 375, 386 (SDNY 2011), plaintiffs' alleged in part that defendant Crossroads, a TPA, was a fiduciary under ERISA and that as such Crossroads breached its fiduciary duty by, among other things, diverting monies properly allocated to plaintiff (UMMF) and helping set up a Local 210 Retiree Fund. In addressing the threshold question of whether Crossroads was in fact a fiduciary under the subject fund, the Southern District Court stated that, in determining whether a party is a fiduciary under ERISA, courts have considered the DOL interpretative guidelines. See 29 C.F.R. § 2509.75-8; *see also Geller v. County Line Auto Sales*, Inc., 86 F.3d 18, 21 (2d Cir. 1996).

Those DOL guidelines provide that "persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures" and, thus, perform "purely ministerial functions" are not fiduciaries. 29 C.F.R. § 2509.75-8. Examples of "purely administrative functions" include:

> (1) Application of rules determining eligibility for participation or benefits;

8

(2) Calculation of services and compensation credits for benefits;

(3) Preparation of employee communications material;

(4) Maintenance of participants' service and employment records;

(5) Preparation of reports required by government agencies;

(6) Calculation of benefits;

(7) Orientation of new participants and advising participants of their rights and options under the plan;

(8) Collection of contributions and application of contributions as provided in the plan;

(9) Preparation of reports concerning participants' benefits;

(10) Processing of claims; and

(11) Making recommendations to others for decision with respect to plan administration.  Id.

Significantly, in finding that Crossroads' could not be found to be a fiduciary in *Fishbein*, the Court stated that most of Crossroads' contractual duties were similar to or encompassed by one or more of the "ministerial" examples provided in the DOL interpretive guidelines. *Fishbein supra.* at 386.

In *New York State Teamsters Council Health & Hosp. Fund v. Centrus Pharmacy Solutions*, 235 F. Supp. 2d 123, 124-28 (N.D.N.Y. 2002), defendant moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), which alleged, in part, that defendant breached its fiduciary duty to the plaintiff under ERISA.  In its decision, the Court noted that the defendant's motion rested on two issues: "(1) whether [defendant] is a fiduciary within the meaning of ERISA; and (2) whether the facts as alleged in the Complaint state a claim for a violation of 29 U.S.C. § 1106(a)."

9

Like the analysis employed by the Court in *Fishbein*, the Court in *New York State Teamsters Council Health & Hosp. Fund* relied upon the Department of Labor's interpretative guidelines in seeking to determine whether the defendants' job functions were such that would render it a fiduciary under ERISA. In finding that the defendant was not a fiduciary under ERISA, the Court analyzed the agreement between the parties, which clearly reflected that the plaintiff bore the ultimate responsibility for all decisions and that the defendant was merely carrying out its ministerial obligations under the Agreement, subject to the plaintiff's control. *See New York State Teamsters Council Health & Hosp. Fund, supra* at 127. Specifically, the Court focused on the fact that pursuant to the agreement, plaintiff retained control over the management and administration of the plan and that each of the duties imposed upon defendant under the Agreement were purely ministerial and did not involve the exercise of discretion regarding the management or administration of the plan, the disposition of plan assets or the rendering of investment advice for a fee or compensation. *See id*. at 128; *see also Geller v. County Line Auto Sales*, 86 F.3d 18 (2d Cir. 1996) (guaranteeing eligibility and remitting premiums is not discretionary); *CSA 401(k) Plan v. Pension Prof'ls, Inc.*, 195 F.3d 1135 (9th Cir. 1999) (preparation of financial reports is ministerial); *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126 (7th Cir. 1992) (plan administrator performing functions spelled out in 29 C.F.R. 2509.75-8 was not a fiduciary); *Harris Trust and Sav. Bank v. Provident Life and Acc. Ins. Co.*, 57 F.3d 608 (7th Cir. 1995) (plan administrator that made eligibility determinations in accordance with plan's claims administration procedure was not a fiduciary); *Blatt v. Marshall & Lassman*, 812 F.2d 810 (2d Cir. 1987) ("Ministerial functions include the application of rules determining eligibility for participation, calculation of services and benefits, and collection of contributions.")

Ultimately, the Court found that the defendant was merely performing ministerial tasks virtually identical to those set forth in 29 C.F.R. 2509.75-8 within a framework of policies made by plaintiff and, therefore, was not an ERISA fiduciary. *See id.*

In the instant case, LEA's duties, as alleged in the complaint, are insufficient to support a finding that LEA is a fiduciary under the plan. Specifically, Providence alleges that "LEA was a fiduciary by virtue of its handling of ongoing Plan administration, accounting, managing contributions, payment of claims and other details for the Plan." While LEA denies these allegations, even if the Court were to accept these allegations as true, these purported responsibilities fall within the "purely administrative functions" set forth by the DOL interpretative guidelines and are analogous to the functions of the defendants in the *Fishbein* and *New York State Teamsters Council Health & Hosp. Fund* cases. LEA was simply doing "ministerial" functions as defined in the DOL guidelines such as: (i) applying rules of the Summary Plan Description ("**SPD**") to determine eligibility of participant's for certain benefits; (ii) calculating services and compensation credits for benefits; (iii) collecting contributions and application of contributions as provided in the plan; and (iv) processing claims. (See Ex B generally).

Additionally, a plain reading of the ASA clearly illustrates the parties' intent to *not* hold LEA out as a fiduciary. As previously discussed, the ASA time and time again states that Providence had the sole authority to make final claim decisions with the respect to the plan. (See id. at p. 2, §§ 4.1, 4.4) While Providence clings to ¶ 4.2 of the ASA in a desperate attempt to create a nexus between LEA's ability to make *initial claims determinations* and them being a fiduciary to the plan, the immediately preceding paragraph of the ASA (¶ 4.1) makes it clear that Providence had the sole authority to make *final claims determinations* on behalf of the plan. If anything, the

11

ASA was a mechanism to divest LEA of all discretionary authority and responsibility in the administration of the plan.

Ultimately, LEA was not provided with any power to make any decisions as to plan policy, interpretations, practices or procedures and was assigned to perform purely administrative actions. *See* 29 C.F.R. § 2509.75-8.

### III.   COUNT II OF THE COMPLAINT MUST BE DISMISSED

#### A.   LEA Was Not a Fiduciary and Therefore Providence Has No Right to an Equitable Accounting.

In Count Two, Providence lumps in a general claim for an equitable accounting under 29 U.S.C. § 1132, ERISA § 502(a)(3) and the SAS. 29 U.S.C. § 1132(a)(3) ("**ERISA § 1132**") states that a civil action may be brought

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (b) to obtain appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter of the terms of the plan;

Providence concedes that it was a fiduciary for the Providence Plan (*see,* Ex A at ¶ 71). ERISA § 1132, therefore, permits a fiduciary to pursue claims such as an equitable accounting in its capacity as a fiduciary. It does not, however, permit Providence to pursue an equitable accounting claim against *anyone* under the guise of ERISA. There still has to be a legal basis for a party to *owe* an equitable accounting to an ERISA fund.

Under New York law, the party against whom an equitable accounting is sought must be a fiduciary itself. The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship with respect to property in which the party seeking the accounting has an interest. *See Adam v. Cutner & Rathkopf,* 238 A.D.2d 234, 242 (1st Dep't 1997); *Palazzo v. Palazzo*, 121 A.D.2d 261, 265 (1st Dep't 1986);

12

*Morgulas v. Yudell Realty*, 161 A.D.2d 211, 213-214 (1st Dep't 1990). If the party against whom an equitable accounting is sought is not a fiduciary, that claim fails. Once again, for the reasons set forth in Point I above, LEA is not a fiduciary and, therefore Count II, which is premised upon Providence's authority under ERISA § 1132, must also be dismissed.

> **B.    The ASA Does Not Require an Accounting Because Providence Failed to Timely Request the Same.**

In support of its claim that an accounting is required pursuant to the ASA, Providence states: "Section 9.4 of the Agreement provides that all claims data is the property of Providence. Providence, as a Plan fiduciary, has an obligation to determine how the assets of the Plan were managed and paid by LEA." (Ex A at ¶ 69).

This demand for *an accounting* of the Plan would equate to an onerous task, a full-blown analysis of each and every Plan claim – a Plan that had hundreds of participants – over a twenty-one month period. This would require an item-by-item accounting of every dollar in and dollar out. Providence is not entitled to this under the ASA (or ERISA).

First, despite the repeated proclamations to the contrary in the Complaint, once again, LEA was not a plan fiduciary. Second, Section 9.4 of the ASA states the following:

> All documents relating to the payment of the Claims shall be the property of Plan Sponsor, subject to Claims Administrator's right to possession and use during the continuance of this Agreement. Following termination of this Agreement, Plan Sponsor has the right, upon thirty (30) days advance written request, to have available documentation retuned to it, at no additional cost.

(Ex B, Sec. 9.4). Notably, this provision does not entitle Providence to an accounting. This section simply requires LEA to return "available documentation" (an undefined term) upon thirty days written notice.

Second, Section 10 of the ASA permits the Plan Sponsor a right to request "*at its own expense, a comprehensive audit of Claim payment records* to assure that administration of the Plan

13

is performed according to the terms of [the ASA] and the SPD." (Ex B, Sec. 10.1 (emphasis added)). This is *not an accounting*. This is an audit that Providence has to pay for. Notably, although it could have, Providence never conducted one. The Plan has been closed since August 31, 2019.

In short, the ASA does not anywhere entitle Providence to an accounting. Count II, therefore, that seeks an accounting pursuant to the ASA must be dismissed.

## CONCLUSION

Accordingly, because Counts I and II of the complaint fail to allege facts sufficient to support an inference that LEA was a plan fiduciary, and the ASA itself indicates that Providence failed to timely pursue an accounting, Counts I and II must be dismissed.

Dated: Uniondale, New York
February 2, 2021

RIVKIN RADLER LLP

By: *Kenneth C. Murphy*
Barry I. Levy
Kenneth C. Murphy (KM 9330).
Brian Feld
926 RXR Plaza, 10th Floor
Uniondale, NY 11556-0926
(516) 357-3000
Casey.Murphy@rivkin.com

5039766 v4

14