UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
THE PROVIDENCE GROUPS, LLC,  : **Case No. 1:20-cv-05067-FB-SJB**
:
Plaintiff,  :
:  **PLAINTIFF'S RESPONSE TO**
v.  : **DEFENDANT'S PRE-ANSWER**
:  **MOTION TO DISMISS COUNT**
OMNI ADMINISTRATORS INC. d/b/a/ LEADING  : **I AND COUNT II OF**
EDGE ADMINISTRATORS,  : **PLAINTIFF'S COMPLAINT**
:
Defendant.  :
:
:
------------------------------------------------------------------- X

Now comes the Plaintiff The Providence Groups, LLC, ("Providence") by and through counsel, and respectfully submits this Response to Defendant Omni Administrators Inc. d/b/a/ Leading Edge Administrator's ("LEA") Pre-Answer Motion to Dismiss Count I and Count II of Plaintiff's Complaint [Doc. 29].  For the reasons set forth herein, LEA's Motion should be denied.

## INTRODUCTION

LEA filed its Motion to Dismiss Count I (Breach of Fiduciary Duties under 29 U.S.C. § 1109) and Count II (Claim for Equitable Accounting under 29 U.S.C. § 1132) of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  LEA asserts that Providence has failed to allege sufficient facts to support its claim that LEA was a fiduciary for Providence's employer sponsored health benefit plan (the "Plan").  LEA claims that it was not specifically identified in the administrative services agreement ("ASA") between LEA and Providence as a fiduciary.  Secondly, LEA claims that the services it performed under the ASA were administrative in nature and not those that would be performed by a fiduciary.  Finally, LEA claims that, because it was not a fiduciary, it is not obligated to provide an equitable accounting for the Plan. [Doc. 29] pp. 1-2.  LEA's arguments

fail to consider the "functional" or "de facto" fiduciary test under ERISA. To the extent it exercised discretionary authority or discretionary control over certain Plan funds, LEA may be held liable as a fiduciary. Accordingly, LEA's actions, regardless of any agreement disclaiming fiduciary status, can and did make it a fiduciary to the Providence health plan. Furthermore, LEA breached its fiduciary duties owed to Providence health plan participants. Therefore, Providence is entitled to an equitable accounting.

## STATEMENT OF FACTS

Pursuant to 29 U.S.C. §§1003(a) and 1101(a), Providence offered and maintained an ERISA employer sponsored health benefit plan (the "Plan") for the benefit of its employees and their dependents. [Doc. 1] ("Complaint") ¶ 8. In 2017, Providence converted its company health insurance plan from a fully insured health plan to a self-insured health plan. *Id.* ¶ 14. As part of the transition from a fully insured plan to a self-insured plan, Providence entered into an Administrative Services Agreement (the "ASA") with LEA, whereby LEA agreed to serve as the third party administrator for the Plan. The term of the Agreement was December 1, 2017, through November 30, 2018. *Id.* ¶ 16.

Pursuant to the ASA, LEA was responsible for ongoing Plan administration, accounting, managing contributions, payment of claims and other details for the Plan. *Id.* ¶ 21. LEA was also required to handle the administration of stop loss insurance coverage for the Plan by submitting all claims to the stop loss insurer, U.S. Fire Insurance Company, in order for Providence (or the Plan) to be reimbursed for medical claims that exceeded the specific and aggregate claim deductibles under the Plan. *Id.* ¶ 28.

Based upon the information from LEA, the Plan was fully funded and all claims were paid for the 2017 Plan Year because of payments from Providence and the payments from the stop loss

2

carrier. *Id*. ¶ 34. As a result, Providence renewed its ASA with LEA for the 2018 Plan Year. *Id*. ¶ 35. Throughout the 2018 Plan Year, LEA required Providence to continue to fund additional amounts purportedly to pay medical claims. The amounts being required greatly exceeded the proposed amounts submitted in LEA's 2018 proposal to Providence. *Id.* ¶ 43.

Due to these discrepancies and LEA's refusal to provide claims data to support its demands, Providence terminated the Plan (and the Agreement) early, effective as of August 31, 2019, and went to a fully insured health plan three months prior to the end of the 2018 Plan Year. *Id*. ¶ 39. Based upon the most up-to-date claims data received by Providence, LEA claims that Providence owes an additional $1,294,953.00 for Plan claims over and above the $2,901,495.04 amount that Providence funded through November 2019. *Id.* ¶ 47. Upon information and belief, the purported shortage in funds for claims is a result of LEA failing to submit certain medical claims to the stop loss insurer in a timely manner; therefore, those claims were denied by the stop loss insurer and Providence has been left responsible for those claims. *Id.* ¶ 49. Additionally, it is believed that LEA received reimbursements from the stop loss insurer for certain medical claims and used those funds to pay other Plan claims that it had failed to process in a timely manner. *Id*. ¶ 53.

## LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of Plaintiffs. *See Cleveland v. Caplaw Enters*., 448 F.3d 518, 521 (2d Cir. 2006); *Homeward Residential, Inc. v. Sand Canyon Corp*., 298 F.R.D. 116, 123 (S.D.N.Y. 2014) (Torres, J.) (citing *Ashcroft v.Iqbal*, 556 U.S. 662 (2009)). In order to survive a motion to dismiss, the complaint "must allege a plausible set of facts sufficient to 'raise a right to relief above the speculative level.'"

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The issue is not whether a plaintiff will prevail but whether the claimant is entitled to offer evidence to support the claims." *York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

"It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings. The issue of fiduciary status is a mixed question of law and fact." *In re Electronic Data Systems Corp.*, 305 F. Supp.2d 658 (E.D. Texas 2004) (citing *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 n. 2 (5th Cir. 1996)). Fiduciary status under ERISA "is to be construed liberally, consistent with ERISA's policies and objectives." *In re Enron Corp. Securities Derivative & ERISA Litigation*, 284 F.Supp.2d 511, 544 (S.D. Texas 2003).

## ARGUMENT

**I.   Providence has alleged sufficient facts to support its claim that LEA was a fiduciary for the Plan.**

Service providers involved in administering plans under ERISA may become fiduciaries in three ways. 29 U.S.C. § 1002(21)(A). They may exercise discretionary authority or control over management of the plan or have authority or control over the disposition of the plan's assets. They may render investment advice about plan assets for compensation. Or, they may have "discretionary authority or discretionary responsibility" over the plan's administration. Id. As the statute makes clear, it is the exercising of discretion that is the "benchmark for fiduciary status under ERISA." *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 632 (8th Cir. 2001). A service provider does not act with discretion to establish fiduciary relationship if its actions (1) conform to the specific contract terms, or (2) can be freely rejected by the plan sponsor. *Rozo v. Principal Life Ins. Co.*, 949 F.3d 1071, 1074 (8th Cir. 2020).

In *Teets v. Great-West Life & Annuity Ins. Co.*, the Tenth Circuit utilized a two-step process to determine whether a service provider, like the Defendant in this case, is a functional fiduciary. 921 F.3d 1200 (10th Cir. 2019). Under the first step, a court must determine whether the service provider's action conformed to the terms of its contract with the plan. Where a service provider follows the terms of an arms-length negotiated contract, it does not act as a fiduciary. *Id.* at 1212. Stated another way, if the actions of the service provider upon which plaintiff bases its claim of fiduciary status are consistent with the terms of the contract between the service provider and the plan, such actions do not confer fiduciary status on the service provider. *Id.*

The standardized terms of the Agreement do not necessarily and definitively answer the question as to fiduciary status. The Court must look at Defendant's actions to determine whether Defendant "took unilateral action ***beyond the specific terms*** of the contract respecting the management of a plan or its assets." *Id.* (emphasis added); *see also White v. Hilton Hotels Retirement Plan*, CV 16-856 CKK, 2020 WL 5946066, at *6 (D. D.C. Oct. 7, 2020). "[I]t is the services provided that are relevant to establish Plaintiffs' breach-of-fiduciary duty claim, not the contracts' 'general structure, untethered to the claims of concrete harm.'" *Id.* (citing *Mulder v. PCS Health Sys., Inc.*, 216 F.R.D. 307, 314 (D. N.J. 2003) (quoting *Pegram v. Herdrich*, 520 U.S. 211, 234 (2000)).

Providence concedes that LEA was not a denominated fiduciary under the terms of the ASA. However, Providence became a de facto fiduciary by virtue of its conduct with regard to handling Plan assets. Specifically, LEA received reimbursements from the stop loss insurer for certain medical claims and, based on information and belief, LEA used those funds to pay other Plan claims that it had failed to process in a timely manner. Complaint, ¶ 55.   LEA was not

5

granted the authority or discretion to use the Plan assets in this manner under the ASA. LEA took unilateral action, outside of the scope of its authority under the ASA, thereby exercising discretionary authority and control over plan funds. Therefore, under the reasoning of the *Teets* case, it may be held accountable as a fiduciary to the extent it exercised this discretion.

      **II.    Because LEA was a functional fiduciary for the Plan, Providence is entitled to an equitable accounting under 29 U.S.C. § 1132.**

LEA asserts that Claim II of the Complaint should be dismissed because Providence is not entitled to an equitable accounting under 29 U.S.C. § 1132; ERISA § 502(a)(3). LEA's reference to New York state law is of no relevance. LEA is a fiduciary under ERISA. ERISA preempts all state laws that "relate to" an employee benefit plan. ERISA §514(a). The Supreme Court has construed the phrase "relate to" regarding a state law's relation to an employee benefit plan to mean (1) has a "connection with" a plan, or (2) a "reference to" a plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). The test applies "even if the law is not specifically designed to affect such plans, or the effect is only indirect . . . and even if the law is 'consistent with ERISA's substantive requirements.'" *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 129 (1992) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)).

ERISA was enacted to "protect . . . the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) Its main objective "is to provide a uniform regulatory regime over employee benefit plans." *Id.*

New York state law regarding fiduciary duties is preempted when, as here, applied to an employee benefit plan where the Plan participants have brought claims for breach of ERISA

6

fiduciary duties. Therefore, Providence is entitled to an equitable accounting as an "appropriate equitable relief" under ERISA § 502(a)(3).

## CONCLUSION

For all the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss Count I and Count II of the Complaint brought pursuant to Fed. R. Civ. P. 12(b)(6) in its entirety, with prejudice.

Dated: New York, New York
March 1, 2021

                      MORRISON COHEN LLP

                      By: /s/ Jay R. Speyer
                          Jay R. Speyer
                          Collin A. Rose

                      909 Third Avenue
                      New York, New York 10022
                      (212) 735-8600
                      jspeyer@morrisoncohen.com
                      crose@morrisoncohen.com

                      -and-

                      HOLIFIELD & JANICH, PLLC

                      By: /s/ Al Holifield
                          Al Holifield (PRO HAC VICE)

                      11907 Kingston Pike, Suite 201
                      Knoxville, Tennessee 37934
                      (865) 566-0115
                      aholifield@holifieldlaw.com

                      *Attorneys for Plaintiff*