UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THE PROVIDENCE GROUP LLC,

                            Plaintiff,                  **Case No.: 1:20-cv-05067 (FB-SJB)**

-against-

OMNI ADMINSTRATORS INC. d/b/a/ LEADING
EDGE ADMINISTRATORS,

                            Defendants.
-------------------------------------------------------------------X

**LEADING EDGE ADMINISTRATOR INC.'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS PRE-ANSWER MOTION TO DISMISS COUNT I AND COUNT II OF PLAINTIFF'S COMPLAINT**

RIVKIN RADLER LLP

Barry I. Levy
Kenneth C. Murphy
Brian L. Feld
926 RXR Plaza, 10th Floor
Uniondale, NY 11556-0926
(516) 357-3000
Casey.Murphy@Rivkin.com

Dated: March 15, 2021

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii-iii

Argument ........................................................................................................................................1

    I.     COUNT I OF THE COMPLAINT MUST BE
          DISMISSED BECAUSE LEA IS NOT, AND
          WAS NEVER INTENDED TO BE,
          A FUDICIARY UNDER THE PLAN. ..................................................................1

    II.    COUNT II OF THE COMPLAINT MUST BE DISMISSED ..............................7

Conclusion .....................................................................................................................................8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adam v. Cutner & Rathkopf*,
 238 A.D.2d 234 (1st Dep't 1997) ...................................................................................................9

*In re Bank of Am. Corp. Secs., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*,
 756 F. Supp. 2d 330 (S.D.N.Y. 2010)..............................................................................................4

*In re Citigroup ERISA Litig.*,
 No. 07-cv-9790, 2009 U.S. Dist. LEXIS 78055, 2009 WL 2762708
 (S.D.N.Y. Aug. 31, 2009) aff'd, *In re Citigroup ERISA Litig.*, 662 F.3d 128
 (2d Cir. 2011) ..................................................................................................................................4

*Citizens United v. Schneiderman*,
 882 F.3d 374 (2d Cir. 2018)............................................................................................................5

*Fishbein v. Miranda*,
 785 F.Supp 2d 375 (SDNY 2011) ...............................................................................................5, 7

*Haley v. Teachers Ins. & Annuity Assn. of Am.*,
 No. 17-CV-855 (JPO), 2018 US Dist LEXIS 52138, (SDNY Mar. 26, 2018).................................5

*In re JPMorgan Chase & Co. ERISA Litig.*,
 No. 12-CV-04027, 2016 U.S. Dist. LEXIS 2709, 2016 WL 110521
 (S.D.N.Y. Jan. 8, 2016)...................................................................................................................4

*Lankau v. Luxoft Holding, Inc.*,
 266 F. Supp. 3d 666 (S.D.N.Y. 2017).............................................................................................5

*LoPresti v. Terwilliger*,
 126 F3d 34 (2d Cir 1997)................................................................................................................6

*Morgulas v. Yudell Realty*,
 161 A.D.2d 211 (1st Dep't 1990) ....................................................................................................9

*New York State Teamsters Council Health & Hosp. Fund v. Centrus Pharmacy Solutions*,
 235 F. Supp. 2d 123 (N.D.N.Y. 2002)........................................................................................5, 7

*Palazzo v. Palazzo*,
 121 A.D.2d 261 (1st Dep't 1986) ....................................................................................................9

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
  No. 17 Civ. 239, 718 Fed. Appx. 3, 2017 U.S. App. LEXIS 19821, 2017 WL 4534782 (2d Cir. Oct. 11, 2017) ................................................................................. 5, 6

*Rozo v. Principal Life Ins. Co.*,
  949 F.3d 1071 (8th Circ. 2020) ............................................................................................. 7

*Securities & Exch. Comm'n v. Thompson*,
  238 F. Supp. 3d 575 (S.D.N.Y. 2017) .................................................................................... 5

*Teets v. Great-West Life & Annuity Ins. Co.*,
  2019 U.S. App. LEXIS 25671 ............................................................................................... 8

*Teets v. Great-West Life & Annuity Ins. Co.*,
  921 F.3d 1200 (10th Cir. 2019) ..................................................................................... 3, 4, 7

**Statutes**

29 U.S.C. 1102(a)(2) ..................................................................................................................... 7

29 U.S.C. § 1002(21)(A) .............................................................................................................. 7

29 U.S.C. § 1109 (ERISA § 409) ................................................................................................. 2

29 U.S.C. § 1132 ....................................................................................................................... 3, 9

29 U.S.C. § 1132, ERISA § 502(a)(3) .......................................................................................... 9

ERISA ........................................................................................................................... 4, 6, 7, 8, 9

ERISA, 29 U.S.C. §1002(21) ....................................................................................................... 4

ERISA § 502(a)(3) .................................................................................................................... 3, 9

**Other Authorities**

29 C.F.R. § 2509.75-8 .................................................................................................................. 7

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 2

This memorandum of law is filed on behalf of Omni Administrators Inc. d/b/a Leading Edge Administrators ("**LEA**"), in further support of its motion seeking an Order (a) pursuant to Fed. R. Civ. P. 12(b)(6) dismissing Count I (Breach of Fiduciary Duties Under 29 U.S.C. § 1109 (ERISA § 409)), and dismissing Count II (Claim for Equitable Accounting Arising Under 29 U.S.C. § 1132; ERISA § 502(a)(3) and the ASA) of Plaintiff's Complaint ("**Complaint**"); and (b) granting LEA such other and further relief as this Court deems just and proper.[1]

## ARGUMENT

I.  **COUNT I OF THE COMPLAINT MUST BE DISMISSED BECAUSE LEA IS NOT, AND WAS NEVER INTENDED TO BE, A FUDICIARY UNDER THE PLAN.**

In its efforts to rescue its claims as set forth in Plaintiff's Response to Defendant's Pre-Answer Moton to Dismiss Counts I and II of Plaintiff's Complaint ("**Opposition**"), Providence wholly ignores Second Circuit precedent and the DOL analysis. (*See* memorandum of law in support of motion to dismiss at p. 5-6). Instead, Providence, a Tennessee based entity (*see* Complaint at ¶ 5), wraps its arms around a fiduciary test it would prefer, but one that has never been accepted in this jurisdiction. Specifically, Providence relies on Tenth Circuit and Eighth Circuit cases to argue that the issue of whether a third-party administrator is or is not a fiduciary comes down to a two-part test. Providence claims: "[a] service provider does not act with discretion to establish a fiduciary relationship if its actions (1) conform to the specific contract terms, or (2) can be freely rejected by the plan sponsor." (Opposition p. 4 *citing Rozo v. Principal Life Ins. Co.,* 949 F.3d 1071, 1074 (8th Circ. 2020)). This language is derived from the Tenth Circuit's decision in *Teets v. Great-West Life & Annuity Ins. Co.,* 921 F.3d 1200

---

[1] All capitalized terms as used herein are the same as those used in LEA's underlying motion. (*E.g.,* ASA is the Administrative Services Agreement).

1

(10th Cir. 2019), where the Court held that a service provider acts as a fiduciary if (1) it "did not merely follow a specific contractual term set in an arm's-length negotiation" and (2) it "took a unilateral action respecting plan management or assets without the plan or its participants having an opportunity to reject its decision." *Teets* at 1212.[2]

Relying on the *Teets* test, Providence argues that LEA took actions "beyond the specific terms of the ASA" because "based on information and belief," LEA used funds received from the stop-loss carrier to "pay other Plan claims that it had failed to process in a timely manner." (Opposition p. 5).[3] On that theory, LEA became a *de facto* fiduciary as a result of this one, isolated alleged act.

This argument fails for several reasons. First, in their Complaint, on the fiduciary issue, Providence asserts that "[p]ursuant to ERISA, 29 U.S.C. §1002(21), LEA was a fiduciary of the Plan… Specifically, LEA was a fiduciary by virtue of its handling of ongoing Plan administration, accounting, managing contributions, payment of claims and other details for the Plan." (Complaint at ¶¶ 20, 21). As set forth in LEA's moving papers, those allegations are exactly the sort of "bare legal conclusions" that have been held "insufficient to state a claim against a purported ERISA fiduciary" in New York courts. *In re JPMorgan Chase & Co. ERISA Litig.*, No. 12-cv-04027 [*543] (GBD), 2016 U.S. Dist. LEXIS 2709, 2016 WL 110521, at *3 (S.D.N.Y. Jan. 8, 2016) ("Plaintiffs have pleaded no facts to support the allegation that JPMorgan was a de facto Plan fiduciary. They have made only the conclusory allegation that JPMorgan was such a fiduciary because it has discretionary authority and control regarding the administration and management of the Plan [ ] and its assets."); *See also In re Bank of Am. Corp. Secs.,*

---

[2] Pursuant to research conducted by the undersigned, no federal court in the Second Circuit has ever adopted and/or applied the two-prong test established by the Tenth Circuit in *Teets*.
[3] Curiously, Providence does not allege that LEA took the funds for its own use but, instead, used stop-loss funds to pay other claims *on behalf of Providence*.

2

*Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 756 F. Supp. 2d 330, 346-48 (S.D.N.Y. 2010); *In re Citigroup ERISA Litig.*, No. 07-cv-9790, 2009 U.S. Dist. LEXIS 78055, 2009 WL 2762708, at *15 (S.D.N.Y. Aug. 31, 2009) aff'd, *In re Citigroup ERISA Litig.*, 662 F.3d 128 (2d Cir. 2011).

Moreover, this "on information and belief" assertion is unsupported by any other facts that would allow this Court to infer anything more than the mere *possibility* that LEA's conduct made it a "*de facto*" fiduciary under the plan. It is well-settled that "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *see also Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 673 (S.D.N.Y. 2017) ("While a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded… The pleadings… must contain something more than [ ] a statement of facts that merely creates a suspicion of a legally cognizable right of action"; *Securities & Exch. Comm'n v. Thompson*, 238 F. Supp. 3d 575, 587-88 (S.D.N.Y. 2017).

Most importantly, however, putting all of that aside, Providence inexplicably makes no effort at all to address the DOL guidelines analysis discussed in the wealth of federal cases in this jurisdiction which stand for the proposition that LEA cannot be considered a fiduciary under the Plan because it had no discretionary authority. *See Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 17 Civ. 239, 718 Fed. Appx. 3, 2017 U.S. App. LEXIS 19821, 2017 WL 4534782, at *2 (2d Cir. Oct. 11, 2017); *Geller v. County Line Auto Sales*, Inc., 86 F.3d 18, 21 (2d Cir. 1996); *Haley v. Teachers Ins. & Annuity Assn. of Am.*, 2018 US Dist LEXIS 52138, at *10-13 (SDNY Mar. 26,

3

2018, No. 17-CV-855 (JPO)); *Fishbein v. Miranda*, 785 F.Supp 2d 375, 386 (SDNY 2011); *New York State Teamsters Council Health & Hosp. Fund v. Centrus Pharmacy Solutions*, 235 F. Supp. 2d 123, 124-28 (N.D.N.Y. 2002).

The Second Circuit – the one that matters here – has routinely held that a "person is a fiduciary with respect to a plan," and, therefore, subject to ERISA fiduciary duties, "to the extent that he or she exercises any authority or control respecting management or disposition of [plan] assets," or, "has any discretionary authority or discretionary responsibility in the administration of such plan." *LoPresti v. Terwilliger*, 126 F3d 34, 40 (2d Cir 1997) (*citing* 29 U.S.C. § 1002(21)(A)(i) and (iii)); *see also Rosen v. Prudential Ret. Ins. & Annuity Co.*, *supra*. Significantly, the Second Circuit does not apply the oversimplified, two-part test cited by Plaintiffs. Instead, it looks at the whole picture under the lens of the DOL interpretative guidelines, which "delineate the responsibilities of a fiduciary, explaining that 'persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures' and, therefore, perform 'purely ministerial functions' are not fiduciaries." *Geller* at *7-8, *citing* 29 C.F.R. § 2509.75-8. The DOL guidelines examples of "purely administrative functions" include the following, all of which were exactly the tasks undertaken by LEA:

> (1) Application of rules determining eligibility for participation or benefits;
>
> (2) Calculation of services and compensation credits for benefits;
>
> (3) Preparation of employee communications material;
>
> (4) Maintenance of participants' service and employment records;
>
> (5) Preparation of reports required by government agencies;
>
> (6) Calculation of benefits;

(7) Orientation of new participants and advising participants of their rights and options under the plan;

(8) Collection of contributions and application of contributions as provided in the plan;

(9) Preparation of reports concerning participants' benefits;

(10) Processing of claims; and

(11) Making recommendations to others for decision with respect to plan administration.[4]

Accordingly, even accepting Providence's conclusory assertion that LEA used monies received from the stop-loss carrier to pay other claims (which we accept only for the sake of this argument) that does not magically transform LEA into a fiduciary. Providence concedes that LEA *was not* designated a fiduciary in the ASA and has pointed to nothing to indicate that LEA had any discretionary authority. (Opposition p. 5). Therefore, it is indisputable that LEA had no "power" to make any decisions at all. *Geller, supra.* It was tasked with following the ASA and applying those rules to the claims as they came in. In other words, at best, Providence alleges that in one instance LEA breached the ASA, exceeded its authority under the ASA and disbursed funds in contravention of that agreement. This may lay the basis for a plain vanilla breach of contract claim (although, notably, Providence *still* has not even stated what provision of the ASA this violated), however, it does not convert LEA to a fiduciary under the DOL analysis.

Finally, while the Second Circuit does not utilize the "two-step process" to determine whether a third-party administrator is a "functional fiduciary" set forth in *Teets, supra.,* even if it did, that test *still would not support Providence's claims*.[5]

---

[4] 29 C.F.R. § 2509.75-8; *see Fishbein* at 386; *see also New York State Teamsters Council Health & Hosp. Fund* at 124 – 128.

[5] It is with good reason that the Second Circuit does not apply this analysis. This test, which apparently permits a third-party administrator to be seen as a fiduciary if it takes a single action that does not "conform to the specific contract terms," *see Rozo.,* 949 F.3d at 1074, has unreasonably extreme consequences. By that analysis, the

5

In *Teets*, the Tenth Circuit affirmed the district court's grant of summary judgment to Great-West, which managed an investment fund associated with a retirement savings plan, on the basis that Great-West was not a fiduciary. In its decision, the Court concluded that the plaintiff did not make an adequate showing in response to Great-West's summary judgment motion that Great-West exercised "authority or control" over the Plan or its assets by changing the Credited Rate without plan or participant approval or that Great-West had sufficient control over its own compensation to render it an ERISA fiduciary. *Teets v. Great-West Life & Annuity Ins. Co.*, 2019 U.S. App. LEXIS 25671 at *17. The *Teets* Court stated the following in its analysis:

> … if the service provider took unilateral action beyond the specific terms of the contract respecting the management of a plan or its assets, the service provider is a fiduciary unless the plan or perhaps the participants in the plan… *have the unimpeded ability to reject the service provider's action or terminate the relationship with the service provider*…Thus, to establish a service provider's fiduciary status, an ERISA plaintiff must show the service provider (1) did not merely follow a specific contractual term set in an arm's-length negotiation; and (2) took a unilateral action respecting plan management or assets without the plan or its participants having an opportunity to reject its decision. (citations omitted) (emphasis added).[6]

In the instant case, while Providence has claimed that LEA was not "granted the authority or discretion to use the Plan assets in this manner under the ASA" and "[t]ook unilateral action, outside of the scope of its authority under the ASA, thereby exercising discretionary authority and control over plan funds," Providence has utterly failed to address (or plead for that matter) whether the Plan or the Plan participants had "the unimpeded ability" to reject LEA's action or terminate the relationship with LEA. (Opposition at pp. 5 – 6). In fact, the ASA clearly and unambiguously established that Providence could terminate LEA at any time, without cause, upon

---

moment a third-party administrator breaches the agreement with the provider of health benefit find (like the ASA), even if that breach is inadvertent or unintentional, the third-party administrator becomes subject to ERISA for fiduciary violations, the consequences of which include attorneys' fees. (29 U.S.C. 1102(a)(2); 29 U.S.C. § 1002(21)(A)).

[6] 2019 U.S. App. LEXIS 25671 at *18 - *19.

6

30 days written notice to LEA. (ASA at ¶ 12.3). Furthermore, the ASA allowed Providence to terminate the ASA "immediately upon written notice for *material breach*, fraud, or misrepresentation," by LEA. (Id. at ¶ 12.2) (emphasis added). Thus, to the extent that Providence alleges that LEA breached the ASA by taking "unilateral action" in using stop-loss receipts to pay other Plan claims, it does not matter. Providence had the *unimpeded ability to terminate its relationship with LEA* and, therefore, even under the *Teets* test, LEA was not a fiduciary.

Accordingly, based on the foregoing, LEA cannot be deemed a fiduciary under the Plan and, therefore, Count I of Plaintiff's Complaint must be dismissed.

## II. COUNT II OF THE COMPLAINT MUST BE DISMISSED

In their opposition papers, Providence attempts to conflate the separate and distinct issues raised in its claim for an equitable accounting under 29 U.S.C. § 1132, ERISA § 502(a)(3) and the subject ASA. For the reasons set forth above, in addition to the arguments contained in LEA's motion to dismiss, Providence is not entitled to an equitable accounting under 29 U.S.C. § 1132 and ERISA § 502(a)(3) because LEA is not a fiduciary under the plan.

By the same token, Providence is also not entitled to an equitable accounting pursuant to the ASA because, pursuant to well-settled New York law, the party against whom an equitable accounting is sought must be a fiduciary itself. The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship with respect to property in which the party seeking the accounting has an interest. *See Adam v. Cutner & Rathkopf,* 238 A.D.2d 234, 242 (1st Dep't 1997); *Palazzo v. Palazzo*, 121 A.D.2d 261, 265 (1st Dep't 1986); *Morgulas v. Yudell Realty*, 161 A.D.2d 211, 213-214 (1st Dep't 1990). If ERISA does not apply because LEA is not a fiduciary under ERISA in the first place, the preemption argument is irrelevant. New York law is only preempted if federal law applies

7

and, here, it does not.  Thus, the applicable New York law referenced in LEA's motion clearly establishes that any and all claims for an accounting must be dismissed.

Finally, Plaintiff has not opposed the portion of LEA's motion seeking dismissal of Count II of Plaintiff's Complaint based on Providence's failure to timely request an accounting pursuant to the ASA or the fact that the plain language of the ASA does not entitle Providence to an accounting.  (*See* LEA Memorandum of Law at pgs. 13 – 14).

Accordingly, Count II of Plaintiff's Complaint must be dismissed.

## CONCLUSION

Accordingly, because Counts I and II of the complaint fail to allege facts sufficient to support an inference that LEA was a plan fiduciary, and the ASA itself indicates that Providence failed to timely pursue an accounting, Counts I and II must be dismissed.

Dated:  Uniondale, New York
       March 15, 2021

>                             RIVKIN RADLER LLP
>
>                        By:  *Kenneth C. Murphy*
>                             Barry I. Levy
>                             Kenneth C. Murphy (KM 9330).
>                             Brian Feld
>                             926 RXR Plaza, 10th Floor
>                             Uniondale, NY 11556-0926
>                             (516) 357-3000
>                             Casey.Murphy@rivkin.com

8