UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
THE PROVIDENCE GROUPS, LLC,

            Plaintiff,

  -against-

OMNI ADMINISTRATORS INC. *doing business as* LEADING EDGE ADMINISTRATORS,

            Defendants.
--------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 2:20-CV-05067-FB-SJB

*Appearances:*
*For the Plaintiffs*:
JAMES A. HOLIFIELD, JR.
Holifield Janich Ferrera PLLC
11907 Kingston Pike, Suite 201
Knoxville, TN 37934

JAY R. SPEYER
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022

*For the Defendants*:
BARRY I. LEVY
KENNETH C. MURPHY
BRIAN L. FELD
Rivkin Radler LLP
926 RXR Plaza
Uniondale, NY 11556-0926

**BLOCK, Senior District Judge:**

      Plaintiff Providence Groups, LLC ("Providence") claims that Defendant Omni Administrators Inc. d/b/a Leading Edge Administrators ("LEA") mismanaged a self-insured healthcare plan by failing to (1) provide accurate information, (2) process and pay claims, and (3) account for payments made to a stop loss insurer.

1

LEA moves to dismiss counts one and two of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is granted in part and denied in part.[1]

## I.

The following facts are taken from the complaint. For present purposes, the Court accepts them as true and draws all reasonable inferences in favor of the plaintiff. *See*, *e.g.*, *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019).

Providence offered and maintained an employer sponsored health benefit plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). In 2017, Providence self-insured the healthcare coverage provided to its employees through an agreement with defendant LEA. By self-insuring, Providence would "accept[] the risk of the Plan's claims to provide medical care up to the amount at which the stop loss insurance carrier would start paying the claims." Compl. ¶ 10.

According to the complaint, the stop loss insurance would pay "any individual claims above $75,000 (specific limit) and the aggregate above all claims if the total claims for the Plan exceeded $1,043,215." *Id.* ¶ 11.

---

[1] Counts three (Negligence), four (Breach of Contract), five (Indemnification) and six (Specific Performance) were not challenged by LEA and are unaffected by this order.

2

During the transition from a fully insured plan to a self-insured plan, Providence entered into an Administrative Services Agreement with LEA where LEA agreed to serve as a third-party administrator for the plan for the period from December 1, 2017 to November 30, 2018. Providence was the "plan sponsor" and LEA was "delegated the duty to make initial claims determinations and to comply with ERISA requirements." *Id*. ¶ 17, 18.

According to the complaint, LEA was a "fiduciary by virtue of its handling of ongoing Plan administration, accounting, managing contributions, payment of claims and other details." *Id*. ¶ 21. LEA also "agreed to indemnify Providence for certain liabilities and losses that Providence may incur or suffer as a result of LEA's misconduct." *Id*. ¶ 23. LEA was required to handle administration of stop loss insurance coverage for the Plan by submitting all claims to the relevant insurer.

At the end of November 2018, the Plan's total costs were $2,009,400.00. That was "more than double the estimated costs to the Plan as stated by LEA." *Id*. ¶ 29. Nevertheless, Providence renewed the contract for the subsequent year based on projected total costs "including administrative and stop loss insurance premiums, for the Plan. . . [equal to] $2,038,848.00." *Id*. ¶ 35.

Due to recurring problems, Providence terminated the plan early on August 31, 2019. It returned to a fully insured health plan. Providence alleges that the total

3

cost for 2017 and 2018 "should not have exceeded $3,765,875.00, comprised of $1,727,027.00 for the 2017 Plan Year and an estimate of $2,038,848.00 for the 2018 Plan Year." *Id*. ¶ 36. Providence alleges that "[o]ver the course of the agreement between the parties, Providence at LEA's direction, funded the Plan with approximately $2,901,495.04 in employer and participant contributions." *Id*. ¶ 38.

Providence alleges that it has requested information from LEA to support the expenditures that were required to fund the plan, which were substantially greater than expected. Providence "needed this information in order for it to process outstanding claims based on Plan discounts and the total employee responsibility." *Id*. ¶ 44. As of filing of the complaint, LEA had not provided all the information requested by Providence "as required pursuant to the Agreement." *Id*. ¶ 45.

LEA now claims that Providence "owes an additional $1,294,953.00 for Plan claims over and above the amount of $2,901,495.04 that Providence funded through November 2019." *Id*. ¶ 47. Providence claims the plan was mismanaged and alleges violations of the agreement and ERISA. Specifically, LEA allegedly failed to "(1) provide timely and accurate accounting and financial information, (2) process claims, (3) pay medical claims timely, and (4) to account for stop loss payments received." *Id*. ¶ 53.

4

The defendants challenge two causes of action: count one, charging breach of fiduciary duty under 29 U.S.C. § 1109 (ERISA § 409), and count two, seeking equitable accounting pursuant to 29 U.S.C. § 1132 (ERISA § 502(a)(3)).

## II.

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The pleading must offer more than "bare assertions," "conclusory" allegations, and a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

5

## III.

Count one is premised on the application of ERISA to a fiduciary. *See* 29 U.S.C.A. § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach"). LEA seeks dismissal of this count on the grounds that it "is not, and was never intended to be, a fiduciary under the plan." Defendant's Memorandum in Support of its Motion to Dismiss at 10, ECF No. 29.

LEA argues the "Administrative Services Agreement" ("ASA") between the parties clearly reflects an intent for Providence, but not LEA, to be considered a fiduciary. For example, the ASA specifies that the "Plan Sponsor" Providence "shall be deemed a 'fiduciary' for the Plan within the scope of this agreement and within the meaning of ERISA" and "shall have discretionary authority and final determinative capability." Defendant's Exhibit B at 3, ECF No. 28-2. No such language exists about LEA. The agreement also specifies that Providence has authority over plan policy, interpretations, and procedures and refers to the services provided by LEA as administrative in nature.[2]

---

[2] The ASA specifies that the "Plan Sponsor shall have discretionary authority and final determinative capability" and that "Plan Sponsor will be responsible for complying with all applicable provisions of [ERISA] include[ing] the fiduciary

6

The Court agrees that a plain reading of the agreement, combined with the administrative nature of LEA's role, compels the finding that LEA was not a fiduciary. "ERISA defines a fiduciary 'in functional terms of control and authority over the plan.'" *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 757 (S.D.N.Y. 2003) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252 (1993)). Moreover, the Second Circuit has concluded that where an entity is performing "ministerial functions" such as "the determination of eligibility for participation or benefits, the maintenance of service and employment records, the calculation of benefits, and the processing of claims," they are not acting as a fiduciary. *Geller v. Cty. Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir. 1996) (requiring the exercise of discretionary authority or control over management of the plan to constitute a fiduciary); *see also Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 F. App'x 3, 5 (2d Cir. 2017) ("Prudential is considered a fiduciary only to the extent that it exercises or possesses discretionary authority in relation to a plan.").

Because LEA was not identified as a fiduciary in the agreement and Providence exercised ultimate control over operation of the plan, LEA should not be considered a fiduciary. Since count one is premised on LEA's status as a fiduciary, the motion to dismiss count one is granted.

---

responsibilities of establishing and structuring the Plan, maintaining adequate funding to support the Plan and making all final Claims decisions." Defendant's Exhibit B at 3, 5, ECF No. 28-2.

7

## IV.

LEA also challenges count two, in which Providence seeks equitable accounting pursuant to 29 U.S.C. § 1132 (ERISA § 502(a)(3)).

While the parties dispute whether LEA is a fiduciary, all agree that Providence is an ERISA fiduciary. LEA argues that Providence is not permitted "to pursue an equitable accounting claim against *anyone* under the guise of ERISA" and that there must "be a legal basis for a party to owe an equitable accounting to an ERISA fund." Defendant's Memorandum in Support of its Motion to Dismiss at 17, ECF No. 29. LEA also contends that "[u]nder New York law, the party against whom an equitable accounting is sought must be a fiduciary itself." *Id*. However, the cases cited by the defendants for this proposition are from New York state courts, and ERISA preempts all state laws that relate to an employee benefit plan. *See New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 651 (1995) (quoting 29 U.S.C. § 1144(a)). Moreover, the plain language of the statute does not require both entities in question to be fiduciaries. *See* 29 U.S.C. § 1132(a)(3) ("by a participant, beneficiary or fiduciary").

ERISA was enacted to "protect . . . the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." *Aetna Health Inc. v. Davila*, 542

U.S. 200, 208 (2004) Its main objective "is to provide a uniform regulatory regime over employee benefit plans." *Id*. At this stage, it would be inappropriate to cut off potential equitable remedies established by § 1132(a)(2). Because the plaintiff's well pleaded factual allegations in count two "plausibly give rise to an entitlement to relief," the defendant's motion is denied as to that count. *Iqbal*, 556 U.S. at 679.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is **GRANTED** as to count one and **DENIED** as to count two.

**SO ORDERED.**

     /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 19, 2021