**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

THE PROVIDENCE GROUPS, LLC, and THE
PROVIDENCE HEALTH GROUP, LLC,

**Case No.: 1:20-cv-05067**

Plaintiffs,

-against-

OMNI ADMINSTRATORS INC. d/b/a/ LEADING
EDGE ADMINISTRATORS,

**OMNI ADMINSTRATORS INC. d/b/a/ LEADING EDGE ADMINISTRATORS ANSWER TO AMENDED COMPLAINT**

and

GCG FINANCIAL, LLC.

Defendants.
-------------------------------------------------------------------X

Defendant Omni Administrators Inc. d/b/a Leading Edge Administrators ("**LEA**"), by
and through its attorneys, RIVKIN RADLER LLP, hereby answers the Amended Complaint
filed by The Providence Groups, LLC and The Providence Health Groups, LLC (collectively
"**Providence**") as follows:

## NATURE OF ACTION

1.      LEA neither admits nor denies the allegations as contained in in paragraph "1" of
the Amended Complaint and respectfully defers all questions of law to the Court for its
determination.

## JURISDICTION AND VENUE

2.      LEA neither admits nor denies the allegations as contained in in paragraph "2" of
the Amended Complaint and respectfully defers all questions of law to the Court for its
determination.

1

3.      LEA neither admits nor denies the allegations as contained in in paragraph "3" of the Amended Complaint and respectfully defers all questions of law to the Court for its determination.

## THE PARTIES

4.      LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "4" of the Amended Complaint.

5.      LEA denies the allegations as set forth in paragraph "5" of the Amended Complaint, as The Providence Health Group, LLC, upon information and belief, is not a Tennessee limited liability company.

6.      LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "6" of the Amended Complaint.

7.      LEA admits to the allegations as contained in in paragraph "7" of the Amended Complaint.

8.      LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "8" of the Amended Complaint.

9.      LEA neither admits nor denies the allegations as contained in in paragraph "9" of the Amended Complaint and respectfully defers all questions of law to the Court for its determination.

## FACTS RELEVANT TO ALL CLAIMS

10.      LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "10" of the Amended Complaint except denies that Douglas P. Cox owns and/or controls each senior living facility comprising the Providence "conglomerate" or

that the structure under which the facilities were operated qualifies as a "conglomerate." ERISA provides for no such thing as a "conglomnerate".

11.    LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "11" of the Amended Complaint.

12.    LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "12" of the Amended Complaint.

13.    LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "13" of the Amended Complaint except admits that LEA issued a proposal to an entity it believed was Providence Health Groups as of November 6, 2017 providing for a self-insured plan with an effective date of December 1, 2017.

14.    LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "14" of the Amended Complaint except admits that LEA issued a proposal as of November 6, 2017 providing for a self-insured plan with an effective date of December 1, 2017.

15.    LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "15" of the Amended Complaint except admits that LEA issued a proposal as of November 6, 2017 providing for a self-insured plan with an effective date of December 1, 2017.

16.    LEA denies the allegations as set forth in paragraph "16" of the Amended Complaint except admits that LEA issued a proposal as of November 6, 2017 providing for a self-insured plan with an effective date of December 1, 2017.

17.    LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "17" of the Amended Complaint.

18.    LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "18" of the Amended Complaint.

19.    LEA denies the allegations set forth in paragraph "19" of the Amended Complaint as may be inconsistent with the referenced Plan and/or Agreement and otherwise respectfully refers the Court to the Plan and/or Agreement for its contents, import and meaning.

20.    LEA neither admits nor denies the allegations contained in paragraph "20" of the Amended Complaint as they state a legal conclusion that does not require a response. To the extent that any of those allegations require a response, LEA denies knowledge or information to form a belief as to those allegations.

21.    LEA neither admits nor denies the allegations contained in paragraph "21" of the Amended Complaint as they state a legal conclusion that do not require a response. To the extent that any of those allegations require a response, LEA denies them as may be inconsistent with the referenced Agreement and otherwise respectfully refers the Court to the Agreement for its contents, import and meaning.

22.    LEA denies the allegations set forth in paragraph "22" of the Amended Complaint as may be inconsistent with the referenced Agreement and otherwise respectfully refers the Court to the Agreement for its contents, import and meaning.

23.    LEA denies the allegations set forth in paragraph "23" of the Amended Complaint as may be inconsistent with the referenced Agreement and otherwise respectfully refers the Court to the Agreement for its contents, import and meaning.

24.    LEA denies the allegations set forth in paragraph "24" of the Amended Complaint as may be inconsistent with the referenced Agreement and otherwise respectfully refers the Court to the Agreement for its contents, import and meaning.

25.     LEA denies the allegations set forth in paragraph "25" of the Amended Complaint as may be inconsistent with the referenced Agreement and otherwise respectfully refers the Court to the Agreement for its contents, import and meaning.

26.     LEA denies the allegations set forth in paragraph "26" of the Amended Complaint as may be inconsistent with the referenced Agreement and otherwise respectfully refers the Court to the Agreement for its contents, import and meaning.

27.     LEA denies the allegations set forth in paragraph "27" of the Amended Complaint as may be inconsistent with the referenced Agreement and otherwise respectfully refers the Court to the Agreement for its contents, import and meaning.

28.     LEA denies the allegations set forth in paragraph "28" of the Amended Complaint except admits that beginning in December of 2017, LEA began processing claims pursuant to the Agreement.

29.     LEA denies the allegations set forth in paragraph "29" of the Amended Complaint.

30.     LEA denies the allegations set forth in paragraph "30" of the Amended Complaint.

31.     LEA denies the allegations set forth in paragraph "31" of the Amended Complaint.

32.     LEA denies the allegations set forth in paragraph "32" of the Amended Complaint.

33.     LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "33" of the Amended Complaint.

34.    LEA denies the allegations set forth in paragraph "34" of the Amended Complaint.

35.    LEA denies the allegations set forth in paragraph "35" of the Amended Complaint.

36.    LEA denies the allegations set forth in paragraph "36" of the Amended Complaint.

37.    LEA denies the allegations set forth in paragraph "37" of the Amended Complaint.

38.    LEA denies the allegations set forth in paragraph "38" of the Amended Complaint.

39.    LEA denies the allegations set forth in paragraph "39" of the Amended Complaint.

40.    LEA denies the allegations set forth in paragraph "40" of the Amended Complaint.

41.    LEA denies the allegations set forth in paragraph "41" of the Amended Complaint.

42.    LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "42" of the Amended Complaint.

43.    LEA denies the allegations set forth in paragraph "43" of the Amended Complaint.

44.    LEA denies the allegations set forth in paragraph "44" of the Amended Complaint.

45.     LEA denies the allegations set forth in paragraph "45" of the Amended Complaint.

46.     LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "46" of the Amended Complaint.

47.     LEA denies the allegations set forth in paragraph "47" of the Amended Complaint.

48.     LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "48" of the Amended Complaint.

49.     LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "49" of the Amended Complaint.

50.     LEA denies the allegations set forth in paragraph "50" of the Amended Complaint and respectfully refers the Court to the Agreement for its contents, import and meaning.

51.     LEA denies the allegations set forth in paragraph "51" of the Amended Complaint and respectfully refers the Court to the Agreement for its contents, import and meaning.

52.     LEA denies the allegations set forth in paragraph "52" of the Amended Complaint.

53.     LEA denies the allegations set forth in paragraph "53" of the Amended Complaint except admits that it sent to Plan Sponsor an Excel spreadsheet in July 2020.

54.     . LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "54" of the Amended Complaint.

55.     LEA denies the allegations set forth in paragraph "55" of the Amended Complaint.

56.     LEA denies the allegations set forth in paragraph "56" of the Amended Complaint.

57.     LEA denies the allegations set forth in paragraph "57" of the Amended Complaint.

58.     LEA denies the allegations set forth in paragraph "58" of the Amended Complaint.

59.     LEA denies the allegations set forth in paragraph "59" of the Amended Complaint.

60.     LEA denies the allegations set forth in paragraph "60" of the Amended Complaint.

<u>**SPECIFIC CAUSES OF ACTION**</u>

<u>**COUNT I**</u>

**FRAUDULANT MISREPRESENTATION (GCG AND LEA)**

61.     Answering paragraph "61" of the Amended Complaint herein, LEA repeats and reiterates each and every denial heretofore made in regard to each and every paragraph of the Amended Complaint, designated as "1" through "60" inclusive with the same force and effect as though more fully set forth at length herein.

62.     LEA denies the allegations set forth in paragraph "62" of the Amended Complaint.

63.     LEA denies the allegations set forth in paragraph "63" of the Amended Complaint.

64.     LEA denies the allegations set forth in paragraph "64" of the Amended Complaint.

65.     LEA denies the allegations set forth in paragraph "65" of the Amended Complaint.

66.     LEA denies the allegations set forth in paragraph "66" of the Amended Complaint.

## COUNT II

### NEGLIGENT MISREPRESENTATION (GCG AND LEA)

67.     Answering paragraph "67" of the Amended Complaint herein, LEA repeats and reiterates each and every denial heretofore made in regard to each and every paragraph of the Amended Complaint, designated as "1" through "66" inclusive with the same force and effect as though more fully set forth at length herein.

68.     LEA denies the allegations as set forth in paragraph "68" of the Amended Complaint and respectfully defers all questions of law to the Court for its determination.

69.     LEA denies the allegations set forth in paragraph "69" of the Amended Complaint.

70.     LEA denies the allegations set forth in paragraph "70" of the Amended Complaint.

71.     LEA denies the allegations set forth in paragraph "71" of the Amended Complaint.

## COUNT III

### NEGLIGENCE (GCG AND LEA)

72.     Answering paragraph "72" of the Amended Complaint herein, LEA repeats and reiterates each and every denial heretofore made in regard to each and every paragraph of the

Amended Complaint, designated as "1" through "71" inclusive with the same force and effect as though more fully set forth at length herein.

73.    LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "73" of the Amended Complaint.

74.    LEA denies the allegations set forth in paragraph "74" of the Amended Complaint as may be inconsistent with the referenced Agreement and otherwise respectfully refers the Court to the Agreement for its contents, import and meaning.

75.    LEA denies the allegations as set forth in paragraph "75" of the Amended Complaint and respectfully defers all questions of law to the Court for its determination.

76.    LEA denies the allegations set forth in paragraph "76" of the Amended Complaint.

77.    LEA denies the allegations as set forth in paragraph "77" of the Amended Complaint and respectfully defers all questions of law to the Court for its determination.

78.    LEA denies the allegations set forth in paragraph "78" of the Amended Complaint.

79.    LEA denies the allegations set forth in paragraph "79" of the Amended Complaint.

80.    LEA denies the allegations set forth in paragraph "80" of the Amended Complaint.

81.    LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "81" of the Amended Complaint.

82.    LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "82" of the Amended Complaint.

83.     LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "83" of the Amended Complaint.

84.     LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "84" of the Amended Complaint.

## COUNT VI

### BREACH OF CONTRACT (LEA)

85.     Answering paragraph "85" of the Amended Complaint herein, LEA repeats and reiterates each and every denial heretofore made in regard to each and every paragraph of the Amended Complaint, designated as "1" through "84" inclusive with the same force and effect as though more fully set forth at length herein.

86.     LEA denies the allegations set forth in paragraph "86" of the Amended Complaint as may be inconsistent with the referenced Agreement and otherwise respectfully refers the Court to the Agreement for its contents, import and meaning.

87.     LEA denies the allegations set forth in paragraph "87" of the Amended Complaint.

88.     LEA denies the allegations set forth in paragraph "88" of the Amended Complaint.

## COUNT V

### INDEMNIFICATION (LEA)

89.     Answering paragraph "89" of the Amended Complaint herein, LEA repeats and reiterates each and every denial heretofore made in regard to each and every paragraph of the Amended Complaint, designated as "1" through "88" inclusive with the same force and effect as though more fully set forth at length herein.

90.     LEA denies the allegations set forth in paragraph "90" of the Amended Complaint as may be inconsistent with the referenced Agreement and otherwise respectfully refers the Court to the Agreement for its contents, import and meaning.

91.     LEA denies the allegations set forth in paragraph "91" of the Amended Complaint as may be inconsistent with the referenced Agreement and otherwise respectfully refers the Court to the Agreement for its contents, import and meaning.

92.     LEA denies knowledge or information to form a belief as to the allegations as contained in in paragraph "92" of the Amended Complaint.

93.     LEA denies the allegations set forth in paragraph "93" of the Amended Complaint.

**COUNT VI**

**SPECIFIC PERFORMANCE (LEA)**

94.     Answering paragraph "94" of the Amended Complaint herein, LEA repeats and reiterates each and every denial heretofore made in regard to each and every paragraph of the Amended Complaint, designated as "1" through "93" inclusive with the same force and effect as though more fully set forth at length herein.

95.     LEA denies the allegations set forth in paragraph "95" of the Amended Complaint as may be inconsistent with the referenced Agreement and otherwise respectfully refers the Court to the Agreement for its contents, import and meaning.

96.     LEA denies the allegations set forth in paragraph "96" of the Amended Complaint.

97.     LEA denies the allegations set forth in paragraph "97" of the Amended Complaint.

98.     LEA denies the allegations set forth in paragraph "98" of the Amended Complaint.

## COUNT VII

**CLAIM FOR EQUITABLE ACCOUNTING
ARISING UNDER 29 U.S.C. § 1132;
ERISA § 502(a)(3) and the AGREEMENT (LEA)**

99.     Answering paragraph "99" of the Amended Complaint herein, LEA repeats and reiterates each and every denial heretofore made in regard to each and every paragraph of the Amended Complaint, designated as "1" through "98" inclusive with the same force and effect as though more fully set forth at length herein

100.    LEA neither admits nor denies the allegations as contained in in paragraph "100" of the Amended Complaint and respectfully defers all questions of law to the Court for its determination.

101.    LEA denies the allegations set forth in paragraph "101" of the Amended Complaint.

102.    LEA denies the allegations set forth in paragraph "102" of the Amended Complaint.

103.    LEA denies the allegations set forth in paragraph "103" of the Amended Complaint.

104.    LEA denies the allegations set forth in paragraph "104" of the Amended Complaint.

## AS AND FOR THE FIRST COUNTERCLAIM FOR BREACH OIF CONTRACT

105.    In or about the Fall of 2017, LEA was approached and asked to serve as the Third-Party Administrator for a self-funded health benefits plan for the employees of an entity that LEA was informed was known as the Providence Health Group ("**PHG**").  LEA was informed it was a single employer of health care professionals working at a number of assisted living and/or nursing facilities in the South.  LEA agreed to do so and, as a result, entered the Agreement.

106.    LEA was unaware, however, that PHG was not, in fact, a single employer. Indeed, it was not until the year 2021, after this suit was initiated, that LEA learned that PHG has no employees at all.  Accordingly, it does not qualify as an "employer" under ERISA.  Instead, PHG is a single member limited liability company ("**LLC**") owned and operated by Douglas Cox.  PHG is an entity (with no employees) that enters contracts to manage and operate nursing and assisted living facilities in multiple states.

107.    Cox, through PHG, enters contracts with nursing homes, some of which he owns individually and some of which he owns through a holding company, to manage those nursing homes.

108.    As of 2018, Cox owned (1) 100% of Fairhaven OPCO LLC, a nursing home in Huntington, West Virginia; (2) 100% of Beaver Dam Nursing and Rehabilitation Center in Beaver Dam, Kentucky: (3) 100% of Ironton OpCo d/b/a Harbor Healthcare, a nursing home in Ironton Ohio; and (4) 60% of Cottages of Clayton, an assisted living facility in Dayton, Ohio. (Collectively, these will all be referred to as the "**Cox Facilities**.")

109.    The Cox Facilities are all separate and distinct corporate entities located in West Virginia, Kentucky and Ohio.  Each of the Cox Facilities have their own staff of employees and contract with PHG for management services.

110.    The Providence Groups LLC (which is different than PHG) is another entity wholly owned by Cox.  That one, however, actually has employees and is located in Goodlettsville, Tennessee.

111.    During the relevant time period, Cox, through PHG, contracted not only with the Cox Facilities, but also with six or seven other nursing or assisted living facilities dispersed across multiple states owned by third-parties (and not Cox).  (Collectively, these will all be referred to as the "**Non-Cox Facilities**.")

112.    In managing the Cox and Non-Cox Facilities, PHG staff, including Cox, decided to pool all of the employees together to establish a self-funded health benefits plan.  As a result, LEA was contacted and the Agreement was entered.  Notably, however, PHG's conduct in establishing the Plan was entirely illegal.  It violated federal ERISA law, the laws of the State of Tennessee and perhaps the laws of several of the other states in which some of the Facilities were located.

113.    Pursuant to 29 CFR § 2510.3-5, there are specific requirements to operate a multi-employer plan.  For example, the group or association must have at least one substantial business purpose other than offering and providing health coverage, the group or association must have a formal organizational structure with a governing body and have by-laws or other similar indications of formality.  Moreover, the functions and activities of the group or association must be controlled by its employer members, and the group's or association's employer members that participate in the group health plan must control the plan.  29 CFR § 2510.3-5(b).  The Plan at issue here had none of those requirements, in fact, *there was no formal association at all.* Instead, it was (as stated in the Complaint) nothing more than a "conglomeration" of entities in which the Plan Sponsor (PHG) had management contracts.

114.    In addition, pursuant to Tennessee Code Statute Annotated § 56-26-204 ("Tenn 204"), multiple employers are permitted to form a "liability pool" for the sake of establishing a health benefit plan.  This requires, however, at least five hundred (500) covered lives (a large enough pool to spread the risk), a constitution or bylaws for the trade or professional association and members that pay regular dues.  The Plan established here by PHG had none of those requirements.

115.    Upon information and belief, none of the Non-Cox Entities were aware that through decisions made by PHG, they were participating in an illegal self-funded health benefits plan on behalf of their employees.

116.    LEA was unaware that PHG was not an employer, but, instead, was intended to be (although it was not properly established to be) a multi-employer plan.

117.    The problems that occurred with respect to the Plan are why laws such as ERISA and Tenn 204 have been stablished.  Specifically, after the Plan was started, several of the Facilities either filed for bankruptcy or simply closed their doors due to poor profits.  This left the other Facilities to cover the health care bills for the shuttered Facilities.

118.    Notably, at no point in time did PHG ever tell LEA that these nursing homes or assisted living facilities were all separate entities.  In fact, when the Plan was established, PHG provide one EIN number, thereby indicating that PHG was single employer.  Moreover, PHG never indicated that the payments made for outstanding health care bills had to be prioritized facility by facility.  Instead, in a haphazard manner, PHG (or whoever was sending the money on PHG's behalf) sent tranches of money to pay bills with no directive on what bills to pay first.

119.    As evidenced by multiple emails, PHG fell behind on its payments as a result of the financial failure of several of its so-called "members."  Despite repeated requests for

additional funds, PHG indicated to LEA that it had simply run out of funds.  Significantly, a failure to fund claims precludes reimbursement by the Stop-Loss insurance carrier.  The Stop-Loss carrier will only reimburse the Plan Sponsor *after* the Plan Sponsor pays the claims.  This fact was clearly set forth in the Stop-Loss insurance policy entered by PHG and was, at the very least, made specifically clear to representatives of PHG by June 2018.

120.    In sum, the failure to fund the outstanding health care bills for which PHG has initiated this action is not the result of any negligence or mismanagement by LEA, but, instead, as a result of PHG's establishment of an illegal health welfare plan.

121.    PHG alleges negligence on behalf of all Defendants but, notably, during the course of the operation of the Plan, it utilized the services of a Chief Financial Officer and in-house General Counsel of the Providence Groups LLC in managing the Plan – a plan in which it was the sponsor and fiduciary as noted in the Agreement.

122.    The Agreement at Section 4.1 specifically states (emphasis added):

Plan Sponsor [*i.e.,* PHG] *will be responsible for complying with all applicable provisions of the Employee Retirement Income Security Act of 1974* (ERISA), as amended.  This includes the fiduciary responsibilities of establishing and structuring the Plan, *maintaining adequate funding to support the Plan* and making all final Claims decisions. Claims Administrator will be responsible for developing, maintaining, printing and providing Plan Sponsor and its covered employees copies of the Plan Document describing the Plan, and copies of a summary brochure of benefits, limitations, exclusions, and waiting periods.  Claims Administrator will also be responsible for administering claims as set forth in Section 4.2 below.

123.    The Agreement at Section 1.1(a) states:

The Claims Administrator shall not be obligated to disburse more in Claims payment under this Agreement than Plan Sponsor shall have made available for the  purpose of payment of Claims, unless required to do so by law of Court Order.  In such instances Plan Sponsor will indemnify the Claims Administrator for the excess amount of the Claims paid.

124.    The Agreement at Section 1.1(b) states:

The Parties agree that this Agreement is not a contract of insurance under any Federal or State law or regulations. The Claims Administrator does not insure, guarantee or underwrite any liability. The Claims Administrator has no responsibility, and the Plan Sponsor [PHG] retains sole responsibility, for payment of claims arising under the Plan and all expenses incidental to payment of Claims, subject to the accompany Stop-Loss Policy.

125.    The Agreement at Section 6.2 states:

Claims Administrator provides administrative Claims payment services only. Claims Administrator is not liable for any of the benefits provided under the Plan.

126.    Section 13.2 noted that both parties were represented by counsel in the execution of the Agreement.

127.    Despite the foregoing, PHG is now seeking for LEA to be its insurer – it is seeking LEA to pay for the claims for its own so-called "employees" health benefits as if LEA is responsible. It is not. This is a breach of the Agreement.

128.    Furthermore, as set forth above, PHG breached the Agreement by failing to establish the Plan in conformity with ERISA.

129.    Finally, PHG breached the Agreement by failing to maintain adequate funding to support the Plan.

130.    LEA is entitled to the attorneys' fees incurred in this action. The claims herein are a direct result of PHG's breaches of the Agreement.

### AS AND FOR THE SECOND COUNTERCLAIM FOR CONTRACTUAL INDEMNIFICATION

131.    Pursuant to § 4.7 of the Agreement between PHG and LEA:

The Plan Sponsor will indemnify, defend, and hold the Claims Administrator and its respective directors, officers and employees harmless from and against any and all claims, suits, actions, liabilities, losses, fines, penalties, damages, and expenses of any kind including, but not limited to court costs and attorney's fees, which Claims Administrator may suffer or incur as a result of any dishonest, fraudulent, negligent, or criminal act or omission of the

Plan Sponsor or its employees, officers or directors, or by the Plan Sponsor's breach of confidentiality or right of privacy of any Plan Participant except for acts taken at the specific direction of the Claims Administrator, or as required by law or regulation. Should the Plan Sponsor be called upon to so indemnify the Claims Administrator, it may at its discretion choose to handle any defense efforts necessary to counter claims against the Claims Administrator and/or the Plan Sponsor which would give rise to, and necessitate, said indemnification. The Plan Sponsor shall be entitled to rely, without investigation or inquiry, upon any written communication(s) of the Claims Administrator or agents of the Claims Administrator. This indemnity does not extend to any acts or omissions other than those enumerated in this paragraph. This indemnity shall survive termination of this Agreement.

132.    Furthermore, § 5.3 provides:

Claims Administrator shall rely on the information provided by Plan Sponsor. Claims Administrator is not responsible for the accuracy of any information provided by Plan Sponsor. Plan Sponsor agrees to hold Claims Administrator harmless, and indemnify Claims Administrator for any losses, which result from the inaccuracy of any information contained in the enrollment transactions.

133.    By reason of the foregoing, PHG is obligated to defend and indemnify LEA in this action as a result of PHG's negligence in performing its duties and obligations as Plan Sponsor.

134.    By reason of the foregoing, PHG is obligated to defend and indemnify LEA in this action as a result of PHG providing LEA with inaccurate information contained in and/or relating to enrollment transactions and failing to adequately fund claims of Plan employee and participants despite LEA's requests, which, pursuant to PHG's claims, has allegedly resulted in losses and damages.

135.    By reason of the foregoing, LEA is entitled to contractual indemnification and for all the defense costs of this action and any damages, costs, expenses, including attorney's fees incurred as a result thereof.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

136.    Providence has failed to state, either in whole or in part, any claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

137.    Providence has not sustained any injury-in-fact or been damaged whatsoever, depriving the Court of subject matter jurisdiction.

### THIRD AFFIRMATIVE DEFENSE

138.    Providence's claims are barred, in whole or in part, by the doctrines of waiver and estoppel, release, and accord and satisfaction.

### FOURTH AFFIRMATIVE DEFENSE

139.    Providence has failed to mitigate its damages, if any.

### FIFTH AFFIRMATIVE DEFENSE

140.    Providence's claims are barred, in whole or in part, by the doctrine of unclean hands.

### SIXTH AFFIRMATIVE DEFENSE

141.    Providence's claims are barred, in whole or in part, on the basis that Providence's alleged damages, if any, were solely caused by other individuals or entities.

### SEVENTH AFFIRMATIVE DEFENSE

142.    The equities do not preponderate in favor of Providence so as to allow recovery based on equitable principles.

### EIGHTH AFFIRMATIVE DEFENSE

143.    Providence has failed to state facts sufficient for an award of attorneys' fees.

## NINTH AFFIRMATIVE DEFENSE

144.    To the extent that Providence's claims are subject to contribution, or any reduction or offset from other parties, any damages recovered against LEA shall be reduced accordingly.

## TENTH AFFIRMATIVE DEFENSE

145.    Should Providence recover damages from LEA, LEA is entitled to indemnification, either in whole or in part, from all persons or entities whose negligence and/or fault proximately contributed to LEA's damages, if any.

## ELEVENTH AFFIRMATIVE DEFENSE

146.    If there was a contract formed between the parties, there were certain conditions precedent to such contract, to wit, the provision that the subject plan was properly formed pursuant to ERISA.  Insofar as that condition precedent was never met, no binding contract was ever finalized.

## TWELFTH AFFIRMATIVE DEFENSE

147.    The Providence Groups LLC is not a proper party to this action insofar as it is not a signatory to the Agreement. Pursuant to Section 1.1(e ), PHG may not assign its rights under the Agreement to any third party without the permission of LEA, which such permission has not and will not be given.

## RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES

148.    LEA reserves the right to assert, and hereby gives notice that it intends to rely upon, any other defenses that may become available or appear during discovery proceedings or otherwise in this case and hereby reserves the right to amend its Answer to assert any such defense.

A trial by jury is demanded.

WHEREFORE, LEA respectfully requests that this Court:

    a)  Dismiss Providence's Amended Complaint in its entirety with prejudice;

    b)  Grant LEA an award of attorneys' fees, costs and disbursements pursuant to the Agreement;

    c)  A monetary judgment in favor of LEA in an amount to be determined at trial, plus costs and attorney's fees; and

    d)  Such other and further relief as this Court deems just, equitable and proper.

Dated: Uniondale, New York
       April 7, 2022

                           RIVKIN RADLER LLP
                           Attorneys for Defendant
                           OMNI ADMINISTRATORS INC. D/B/A
                           LEADING EDGE ADMINISTRATORS,

                  By:   */s/ Kenneth C. Murphy*
                           KENNETH C. MURPHYp
                           926 RXR Plaza
                           Uniondale, New York 11556-0926
                           (516) 357-3000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was emailed to counsel for Plaintiffs on April 7, 2022.

                           */s/ Kenneth C. Murphy*
                           Kenneth C. Murphy