**Holifield & Janich PLLC**

Al Holifield, Member
11907 Kingston Pike, Suite 201 · Knoxville, TN 37934

Email: aholifield@holifieldlaw.com
Phone: (865) 566-0115
Cell: (865) 384-6844
Fax: (865) 566-0119
Web: www.holifieldlaw.com

June 5, 2023

**VIA ECF**

Hon. Frederic Block
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

>    Re:   *The Providence Groups, LLC, and The Providence Health Group, LLC v. Omni Administrators, Inc. d/b/a Leading Edge Administrators and GCG Financial, LLC*
>    Docket No.: 1:20-cv-05067 (FB) (SJB)
>    ***Formal Request for Pre-Motion Conference***

Dear Judge Block:

We are co-counsel for plaintiffs The Providence Groups, LLC, and The Providence Health Group, LLC ("Providence") in the above-captioned matter. The purpose of this letter is to request a pre-motion conference regarding Providence's proposed Motion for Summary Judgment for its claims against GCG Financial, LLC ("GCG"), pursuant to Your Honor's Individual Practice Rules, Rule 2.A. Alternatively, Providence requests that it simply be granted permission to file its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 without convening a pre-motion conference.

Providence is a conglomerate of senior living facilities around the country, each owned and/or controlled by Douglas P. Cox, a resident of Tennessee. GCG is an Illinois-based consultant and broker for employers and employee health benefit plans. In approximately April of 2016, Providence consulted GCG about providing health insurance for employees to include all entities owned by Cox, as well as those entities which Providence anticipated would be joining by virtue of management contracts which were being negotiated at that time. Providence had previously worked with GCG broker Linda Tarpo ("Tarpo"), when it acquired one of its facilities located in Huntington, West Virginia. Therefore, it consulted with Tarpo in evaluating whether to transition to a self-insured plan.

Tarpo consulted with Providence and advised it to select Leading Edge Administrators ("LEA"), as its third-party administrator ("TPA"). On or about November 8, 2017, based upon the advice of GCG, Providence entered into an Administrative Services Agreement (the "ASA"), whereby LEA agreed to provide claims administration for Providence's self-insured health plan, which was to be effective as of December 1, 2017.

Holifield & Janich, PLLC

June 5, 2023
Page 2 of 3

Although Providence is based out of Tennessee, Tarpo never requested, sought or presented proposals from any Tennessee TPA. In reliance upon the 2017 LEA Proposal and the advice of Tarpo, Providence established a self-insured health plan for its employees.

Almost immediately, Providence had difficulty with LEA regarding delay or failure to pay claims and inaccurate and/or incomplete reporting of claims and the overall status of the health plan. Nevertheless, Providence was led to believe by LEA and GCG that its health plan was operating well. In fact, in the 2018 renewal proposal ("2018 Proposal") GCG states, "Providence Group has saved an estimated 17% under the current medical funding arrangement compared to staying fully insured for the 2017-2018 plan year." However, the 2018 Proposal reported total claims of $549,562, when in fact (unbeknownst to Providence) total claims incurred as of that date totaled over $1.7 million. GCG did not solicit any other bids, fully-insured or self-insured, and informed Providence it should renew with LEA. Providence relied on GCG's representations and advice and maintained its self-insured health plan with LEA. Eventually, Providence terminated the contract in August 2019 and moved to a fully insured plan with Blue Cross Blue Shield of Tennessee.

**Grounds for Motion**

Providence respectfully requests leave to file a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, as there are no genuine issues of material fact and Providence is entitled to judgment as a matter of law. Although summary judgment is a severe remedy, "[c]ourts should not be reluctant to grant summary judgment in appropriate cases." *Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103, 134 (S.D.N.Y.1989); *Witter v. Abell–Howe Co*., 765 F.Supp. 1144 (W.D.N.Y.1991). Where "no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Pfizer Inc. v. Astra Pharmaceutical Products, Inc.,* 858 F.Supp. 1305, 1316 (S.D.N.Y.1994) (quoting *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223–24 (2d Cir.1994)).

The First Amended Complaint alleges the following claims against GCG: fraudulent misrepresentation, negligent misrepresentation, and negligence. The elements of common law fraud in New York are "(1) a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury." *Premium Mortg. Corp. v. Equifax, Inc*., 583 F.3d 103, 108 (2d Cir. 2009).

The 2018 Proposal to Providence contained material misrepresentations, as well as omissions. GCG intentionally misrepresented the claims data to Providence and also failed to disclose "incurred but not reported" (IBNR) data. GCG's actions were intended to induce Providence to rely upon the proposal by maintaining its self-insured plan and not moving its business to a competing insurance company. As to Providence, it justifiably relied on GCG and the information in the 2018 Proposal. It was its first year being self-insured and, because reporting had been so lacking, it had no way of making "heads or tails" of the claims information being presented or any reason to question it. As to injury, had GCG provided accurate data in its 2018 Proposal, Providence would not have renewed its self-insured health plan and would have moved to a fully-insured platform (which it did successfully after terminating the ASA with LEA in August 2019).

Holifield & Janich, PLLC

June 5, 2023
Page 3 of 3

To establish a claim for negligent misrepresentation, plaintiff must show 1) a special privity of relationship, thereby imposing a duty to impart correct information; 2) imparting of information that is not correct; 3) justifiable reliance on the part of Providence and 4) damages. *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007).

Tarpo and Providence had a special privity of relationship. Tarpo was broker of record for Providence. She testified in her deposition she had over 20 years of experience and that she had a great deal of experience specifically with nursing home/assisted living facility coverage. Providence was new to the self-insured market and heavily relied upon the relationship with and advice of Tarpo. It is clear from the emails provided throughout discovery and in Tarpo's deposition testimony that Tarpo actively participated in, not only brokering the deal with LEA, but also the management of Providence's plan. She frequently communicated with Providence employees, especially CFO Rachel Kamau, as well as several members of LEA's staff involved with the administration of the plan. Tarpo had a duty to impart correct information to Providence by virtue of this special privity of relationship.

As described above, Tarpo imparted incorrect information in the 2018 Proposal. Due to the misleading information provided, Providence believed that its claims had been adequately funded for the 2017 Plan Year and relied on the representations made in the 2018 Proposal in deciding to renew the Plan for the 2018 Plan Year. Providence relied upon this incorrect information and suffered damages as a result by continuing its self-funded plan instead of moving to a fully-insured arrangement. Providence did not discover that the information provided in the 2018 Proposal was grossly inaccurate until after this litigation was instituted and discovery ensued.

Finally, as to Providence's negligence claim, GCG owed Providence a duty to use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use. GCG breached this duty by failing to exercise reasonable care or competence in obtaining initial coverage. Tarpo did not even get a proposal from Blue Cross Blue Shield of Tennessee, the largest insurer in Tennessee. GCG further breached its duties by failing to consult and advise accurately regarding stoploss, payment of claims and the overall viability of the health plan. Finally, GCG violated these duties when it failed to independently verify claims information presented in the 2018 Proposal and failed to seek proposals for medical coverage from other TPA's, even when it was undeniably aware of substantial ongoing payment and reporting issues that Providence had experienced with LEA. GCG's negligence caused harm and damages to Providence as described above.

Accordingly, we respectfully request the Court schedule a pre-motion conference or, in the alternative, grant permission to file and establish a briefing schedule for Providence's Motion for Summary Judgment. Thank you for your time and consideration.

                                                          Respectfully submitted,

                                                          /s/ Al Holifield
                                                          Al Holifield

cc:     All Counsel (via ECF)

4895-9381-5400, v. 1